**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

GRAYDON EARL COMSTOCK, JR.,

*Respondent-Appellee.*

No. 07-7671

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

SHANE CATRON,

*Respondent-Appellee.*

No. 07-7672

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

THOMAS MATHERLY,

*Respondent-Appellee.*

No. 07-7673

UNITED STATES OF AMERICA,

        *Petitioner-Appellant,*

        v.

MARVIN VIGIL,

        *Respondent-Appellee.*

No. 07-7674

UNITED STATES OF AMERICA,

        *Petitioner-Appellant,*

        v.

MARKIS REVLAND,

        *Respondent-Appellee.*

No. 07-7675

On Remand from the Supreme Court of the United States.
(S. Ct. No. 08-1224)

Argued: September 21, 2010

Decided: December 6, 2010

Before TRAXLER, Chief Judge, and MOTZ and AGEE,
Circuit Judges.

Reversed and remanded by published opinion. Judge Motz
wrote the opinion, in which Chief Judge Traxler and Judge
Agee joined.

**COUNSEL**

**ARGUED**: Mark B. Stern, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Appellant. G.

Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jonathan F. Cohn, Deputy Assistant Attorney General, Samantha L. Chaifetz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; George E. B. Holding, United States Attorney, R. A. Renfer, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Thomas P. McNamara, Federal Public Defender, Jane E. Pearce, Assistant Federal Public Defender, Lauren Brennan, Research and Writing Attorney, Eric Brignac, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellees.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

In these consolidated cases, we resolve identical constitutional challenges to the civil commitment provision of the Adam Walsh Child Protection and Safety Act of 2006 (the "Act")—18 U.S.C. § 4248 (2006).

Invoking the Act, the United States initiated these cases by asking the district court to order the civil commitment of five individuals—Graydon Comstock, Shane Catron, Thomas Matherly, Marvin Vigil, and Markis Revland. The district court refused to do so, finding the Act unconstitutional because (1) it was "not a proper exercise of any power that Congress might constitutionally exercise" and (2) "commitment pursuant to § 4248" would violate the Due Process Clause. *United States v. Comstock*, 507 F. Supp. 2d 522, 559-60 (E.D.N.C. 2007). We affirmed on the first ground alone. *See United States v. Comstock*, 551 F.3d 274 (4th Cir. 2009).

The Supreme Court reversed, holding that "the Constitution . . . authorizes Congress to enact the statute" and remanding the cases to us. *United States v. Comstock*, 130 S. Ct. 1949, 1965 (2010). Accordingly, we must now address the due process challenge.

The Act authorizes civil commitment only if a court finds by "clear and convincing evidence" that a person "has engaged or attempted to engage in sexual violence or child molestation" *and* is "sexually dangerous to others." §§ 4248(d), 4247(a)(5). The district court held that the Due Process Clause requires the Government to establish the first of these findings by proof beyond a reasonable doubt, rendering unconstitutional the less rigorous "clear and convincing evidence" standard set forth in the Act. *Comstock*, 507 F. Supp. 2d at 559-60. For the reasons that follow, we reverse.

## I.

We begin by outlining the relevant statutory provisions of § 4248 and then set forth the procedural history of these consolidated cases.

## A.

The statute challenged here permits the Attorney General, his designee, or the Director of the Bureau of Prisons ("BOP") to certify a person as "sexually dangerous" and ask a federal district court to order that person's civil commitment. 18 U.S.C. § 4248. Commitment may be sought only "in relation to a person (1) in the custody of the Bureau of Prisons," or (2) committed to the Attorney General pursuant to 18 U.S.C. § 4241(d) (mental incapacity rendered the person incapable to stand trial for criminal charges), or (3) against whom all criminal charges have been dismissed solely because of a mental condition. § 4248(a). Filing a certificate alleging that a person is "sexually dangerous" automatically stays the person's release from federal custody and triggers a hearing in which

the district court determines whether the certified person is in fact "sexually dangerous." *Id.*

Prior to the hearing, the court may order an expert psychiatric or psychological examination of the certified person, with the resulting report filed with the court. § 4248(b). At the required hearing, the Act mandates that an attorney represent the certified person and provides for court-appointed counsel for any indigent person. §§ 4248(c), 4247(d). Furthermore, the Act affords a certified person an opportunity to present evidence, testify, subpoena witnesses, and confront and cross-examine witnesses. §§ 4248(c), 4247(d). The court can civilly commit a person only if, after considering all the evidence, the court finds that the person is "sexually dangerous" by clear and convincing evidence. § 4248(d).

For the court to make such a finding, the Government must prove by "clear and convincing evidence" that the certified person "has engaged or attempted to engage in sexually violent conduct or child molestation" *and* is "sexually dangerous to others." §§ 4248(d), 4247(a)(5). To establish the latter finding, the Government must prove that a person "suffers from a serious mental illness, abnormality, or disorder" and "as a result . . . would have serious difficulty in refraining from sexually violent conduct or child molestation if released." §§ 4247(a)(5)-(6). Thus, in total, the Act requires the Government to establish three facts by clear and convincing evidence before obtaining a commitment order: that the person (1) has engaged or attempted to engage in sexually violent conduct or child molestation, (2) suffers from a serious mental illness, abnormality, or disorder, and (3) as a result, would have serious difficulty refraining from sexually violent conduct or child molestation if released.

In the event the court orders civil commitment, the Attorney General must "make all reasonable efforts" to arrange for a State to assume responsibility for the person's "custody, care, and treatment." § 4248(d). If the Attorney General

effects the transfer, federal custody ceases; but if no State will assume responsibility, then § 4248 authorizes the Attorney General to hold the person "for treatment in a suitable facility" until discharge. *Id.* Before placing a person in a facility, the Attorney General must consider the "suitability of the facility's rehabilitation programs in meeting the needs of the person." § 4247(i)(C).

As long as the Attorney General holds the person pursuant to a § 4248 commitment order, the Act requires the director of the facility to which the person is committed to prepare annual reports on the mental condition of the person and whether the need for the person's continued commitment persists. § 4247(e)(1)(B). These reports must be submitted to the district court that ordered the person's commitment. *Id.* The director of the facility also must notify the person of any available rehabilitation programs. § 4247(e)(2).

The Act offers a person committed to a federal facility pursuant to § 4248 several avenues to discharge. When the director of the facility determines that the "person's condition is such that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen" of care or treatment for his condition, the director "shall promptly file a certificate to that effect" with the district court. § 4248(e). The court then "shall order the discharge" or, on the Government's motion or the court's own initiative, hold a hearing to determine whether discharge is appropriate. *Id.* Alternatively, counsel for the committed person or a legal guardian may move for discharge and, if denied, renew that motion repeatedly every 180 days after a denial. § 4247(h).

At a discharge hearing, the committed person must be afforded the same rights to counsel, to present evidence, and to subpoena and cross-examine witnesses as afforded him at the commitment hearing. If the court finds by a "preponderance of the evidence" that a committed person is no longer

sexually dangerous to others if released unconditionally or if released under a prescribed regimen of treatment, then the court must order the appropriate discharge. § 4248(e). The Act also preserves a committed person's right to habeas relief. § 4247(g).

## B.

In the consolidated cases before us, the BOP certified Comstock, Vigil, Matherly, Revland, and Catron (collectively the "respondents") as "sexually dangerous" persons subject to civil commitment under § 4248. At the time of certification, all five were confined at the Federal Correctional Institute in Butner, North Carolina.

Comstock, who pled guilty to one count of receiving material involving sexual exploitation of minors by computer in violation of 18 U.S.C. § 2252(a)(2), had been sentenced to 37-months imprisonment, followed by a 3-year term of supervised release. At the time the Government certified him as a sexually dangerous person pursuant to § 4248, Comstock was serving the last few days of his term of imprisonment, which expired on November 8, 2006.

The cases of Vigil, Matherly, and Revland followed a similar course. Vigil had pled guilty to one count of sexual abuse of a minor in violation of 18 U.S.C. § 2243(a) and § 2246 and received a sentence of 96-months imprisonment, followed by a 3-year term of supervised release. The Government certified him as a "sexually dangerous" person on November 22, 2006, the very day his federal term of imprisonment expired.

Matherly had pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B) and § 2252(b)(2) and received a sentence of 41-months imprisonment, followed by a 3-year term of supervised release. The Government certified him as a "sexually danger-

ous" person on November 22, 2006, one day before his projected release date.

Revland had pled guilty to one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(5)(B) and received a sentence of 60-months imprisonment, followed by a 3-year term of supervised release. The Government certified him as a "sexually dangerous" person on November 22, 2006, about six weeks before his federal term of imprisonment expired.

Catron's case differs from the others in some respects. The Government had charged Catron with four counts of aggravated sexual abuse of a minor under the age of twelve and one count of abusive sexual conduct. After some pre-trial proceedings involving expert evaluation and psychological therapy, a district court found that Catron suffered from a mental disease or defect, which rendered him incompetent to stand trial on the criminal charges and unable to be restored to competence in the near future. The Government then certified Catron as suffering from a "mental disease or defect" that qualifies for civil confinement under 18 U.S.C. § 4246. Upon considering the newly-enacted § 4248 commitment provision, however, the Government withdrew its § 4246 certificate and certified Catron as a sexually dangerous person subject to civil commitment pursuant to § 4248.

Although the district court never formally consolidated the five cases, the parties filed substantially identical pleadings in each case, and the court treated the cases in the same manner. In each case, upon receiving the certificate of sexual dangerousness, the district court promptly entered an order to provide each respondent with several procedural protections.

First, the court found each respondent eligible for appointment of counsel at the Government's expense under § 4247(d) and directed the Federal Public Defender to provide each with representation. Second, the court determined that each respon-

dent could not afford witness fees and so ordered the clerk to issue subpoenas for any witness necessary for an adequate defense and the marshal to serve these subpoenas and pay the appropriate expenses to the subpoenaed witnesses. Third, in each case, the district court ordered two mental health evaluations—one by an expert designated by the respondent and the other by an expert designated by the Government. Finally, the court set the date for a timely hearing in each case to determine whether the respondent was, as the Government certified, a sexually dangerous person subject to civil confinement.

Prior to the scheduled hearing, each respondent moved to dismiss the Government's petitions for certification, asserting multiple constitutional challenges to § 4248. Respondents contended that the Act violated the Equal Protection Clause, but the district court did not reach this challenge. Respondents also contended that the Act created a criminal, as opposed to civil, commitment scheme and as such violated the Double Jeopardy and *Ex Post Facto* Clauses, the Eighth Amendment prohibition against cruel and unusual punishment, and the Sixth Amendment right to a jury trial. Relying on *Kansas v. Hendricks*, 521 U.S. 346, 361-63 (1997), in which the Supreme Court upheld a state civil commitment scheme challenged on similar grounds, the court held that § 4248 establishes a civil, not criminal, commitment scheme and so rejected all of these contentions. *Comstock*, 507 F. Supp. 2d at 529-30.

The district court, however, did invalidate the Act on the basis of respondents' principal constitutional challenges. Thus, the court held that § 4248 (1) exceeded Congress's powers under the Constitution and (2) violated the Due Process Clause. *Id.* at 560. Without reaching the second ground, we affirmed on the first. *Comstock*, 551 F.3d at 278-84. The Supreme Court reversed our holding on the first ground, explaining that § 4248 does not exceed congressional authority. *Comstock*, 130 S. Ct. at 1965. The Court also did not

reach the second ground and remanded the cases to us to resolve any other challenges that respondents had preserved. *Id.* We ordered supplemental briefing and must now resolve the sole remaining challenge preserved by respondents—their due process contention.[1]

## II.

Before addressing the merits of respondents' due process contention, we note at the outset the daunting task they face.

First, they challenge the constitutionality of a federal statute. In considering any constitutional attack on a federal statute, a court presumes that Congress has complied with the Constitution. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 607 (2000). Moreover, this "deference to congressional judgment must be afforded even though the claim is," as it is here, "that a statute Congress has enacted effects a denial of the procedural due process guaranteed by the Fifth Amendment." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 319-20 (1985).

Second, respondents mount only a facial challenge to the Act. Although the district court held the clear and convincing evidence standard unconstitutional on its face, courts generally disfavor such facial challenges. Indeed, in *United States v. Salerno*, the Supreme Court stated that a party asserting a facial challenge to a statute "must establish that no set of circumstances exists under which the Act would be valid." 481 U.S. 739, 745 (1987). In the years since *Salerno*, some mem-

---

[1]In a short footnote in their supplemental brief, respondents urge us to "adopt" the view that § 4248 "constitutes criminal, not civil, proceedings." Appellees' Supp. Br. at 1 n.1. Respondents, however, have failed to preserve that argument, for nowhere in their 80-page original brief did they assert it. Indeed, in that brief, they expressly recognized "that this Court is bound by the Supreme Court decision in *Kansas v. Hendricks*, 521 U.S. 346 (1997)" and simply noted that they sought to preserve the "issue for Supreme Court review." Appellees' Br. at 18 n.3.

bers of the Court have expressed reservations about the applicability of this stringent standard. *See City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999) (Stevens, J., with two Justices concurring); *but see Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174, 1178-79 (1996) (Scalia, J., dissenting from denial of certiorari with two Justices concurring). But at the very least, a facial challenge cannot succeed if a "statute has a 'plainly legitimate sweep.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

With these principles in mind, we consider respondents' due process challenge.

### III.

We begin by returning to the statutory language at issue here. The Act requires the Government to prove by clear and convincing evidence that a person sought to be civilly committed (1) has engaged or attempted to engage in sexually violent conduct or child molestation (the "prior bad act finding"), (2) "suffers from a serious mental illness, abnormality, or disorder," and (3) "as a result . . . would have serious difficulty refraining from sexually violent conduct or child molestation if released." § 4247(a)(5)-(6).

More than thirty years ago, the Supreme Court held that a state could civilly commit a person *without* proving "beyond a reasonable doubt" that he suffered from a mental illness and required hospitalization for the protection of himself and others. *See Addington v. Texas*, 441 U.S. 418, 427-31 (1979). The Court explained that a state did not have to meet such a "heavy" burden of proof because the reasonable doubt standard "historically has been reserved for criminal cases . . . as a critical part of the moral force of the criminal law, and we should hesitate to apply it too broadly or casually in noncriminal cases." *Id.* at 428 (internal quotation omitted). Instead,

*Addington* expressly held that proof by clear and convincing evidence sufficed to justify civil commitment of mentally ill persons. *Id.* at 432-33. The Supreme Court has never retreated from these holdings. *See Hendricks*, 521 U.S. at 357.

Respondents concede that *Addington* governs the second and third prerequisites to civil commitment under the Act, and so the Government need only offer clear and convincing evidence to prove them. Respondents insist, however, that to establish the prior bad act finding, the Government must offer proof beyond a reasonable doubt. Because § 4248 requires proof only by clear and convincing evidence, they contend that it violates the Due Process Clause.

Respondents rest their argument entirely on *In re Winship*, 397 U.S. 358 (1970), which the Supreme Court decided nine years before *Addington* and which neither involved nor discussed civil commitment proceedings. At issue in *Winship* was a New York statute that defined a juvenile delinquent as a youth who "does any act which, if done by an adult, would constitute a crime." *Id.* at 359. *Winship* addressed whether juveniles in such delinquency hearings, like adults in criminal trials, "are constitutionally entitled to proof beyond a reasonable doubt when they are *charged with violation of a criminal law*." *Id.* at 365 (emphasis added). The Court concluded that juveniles were so entitled, because "'[a] proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.'" *Id.* at 366 (quoting *In re Gault*, 387 U.S. 1, 36 (1967)).

Respondents maintain that § 4248 and the regulations promulgated pursuant to it require a "prior criminal act finding." Appellees' Supp. Br. at 2. They further contend that "*Winship*'s logic dictates that the 'beyond a reasonable doubt' standard must apply" to this finding. *Id.* Respondents assert that § 4248 "implicates the exact concerns" that prompted *Winship* to "mandate the use of the reasonable doubt standard in crimi-

nal cases." *Id.*; *see also* Appellees' Br. at 58-60. They argue that *Winship* requires that we ignore the Act's "'civil' label" and treatment goals and "mandates the . . . most rigorous procedural safeguards." Appellees' Supp. Br. at 2-3. Respondents are wrong on all counts.

## A.

First, contrary to respondents' contention, neither the Act nor its regulations require a "prior criminal act finding."

Nothing in the Act requires that the finding of past conduct constitute criminal behavior. By its terms, the Act mandates a finding that a person "has engaged or attempted to engage in sexually violent conduct or child molestation." The Act does not define the terms "sexually violent conduct" and "child molestation," which are broad enough to encompass noncriminal conduct such as unlawful, tortious conduct.

The regulations promulgated pursuant to the Act also do not limit "sexually violent conduct" or "child molestation" to criminal activity. They define "sexually violent conduct" to "include[ ] any unlawful conduct of a sexual nature with another person." 28 C.F.R. § 549.92 (emphasis added). Similarly, the regulations define "child molestation" to "include[ ] any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years." 28 C.F.R. § 549.93 (emphasis added). The regulatory definitions encompass, but are not limited to, criminal conduct and thus could include unlawful, tortious conduct. *See, e.g., Pettit v. Erie Ins. Exch.*, 709 A.2d 1287, 1292-93 (Md. 1998) (citing cases involving the tort of sexual battery).[2]

---

[2]Two observations further support our conclusion: The Act applies to persons "against whom all criminal charges have been dismissed" for reasons of a mental illness or incompetence to stand trial—persons like respondent Catron. § 4248(a). Such individuals may have committed the conduct required under the statute, but they could not be convicted of a

In sum, respondents misread the Act and its regulations; they require a finding of a prior bad act—not a finding of a "prior criminal act."

## B.

Moreover, even if civil commitment did rest in part on the commission of a prior criminal act, respondents' arguments fail. For *Addington* establishes that the purpose and structure of the commitment process render it unlike any criminal prosecution. Thus, respondents misunderstand *Winship* and *Addington* and ignore the *Addington* Court's painstaking explanation of the limited scope and force of its holding in *Winship*.

Indeed, *Addington* expressly rejected respondents' view that the "rationale of the *Winship* holding . . . applies with equal force to a civil commitment proceeding." *Addington*, 441 U.S. at 427. Rather *Addington* held that a civil commitment proceeding, unlike the juvenile delinquency hearings in *Winship*, "can in no sense be equated to a criminal prosecution." *Id.* at 427-28. *Addington* characterized *Winship*'s unusual expansion of the criminal burden of proof as the product of "a gradual assimilation of juvenile proceedings into traditional criminal prosecutions." *Id.* at 427. Against that background, *Addington* explained that *Winship* had seen "no controlling difference in loss of liberty and stigma between a conviction for an adult and a delinquency adjudication for a juvenile." *Id.*

---

criminal offense due to their mental illness or incompetence. Under the plain language of the Act, that is sufficient. In addition, the Act does not define a criminal offense. It does not require a finding that the "sexually violent conduct" or "child molestation" was accompanied by a showing of scienter, as traditional criminal statutes do. *See Hendricks*, 521 U.S. at 362. Once again, the requisite factual finding under the Act is limited to bad sexual conduct without regard to whether criminal culpability could also be shown.

By contrast, in a civil commitment proceeding, "state power is not exercised in a punitive sense." *Id.* at 428. While the stigma inflicted by a finding of juvenile delinquency is "by definition bottomed on a finding that the accused committed a crime," *Winship*, 397 U.S. at 374 (Harlan, J., concurring), civil commitment is not "bottomed" on a finding that a person committed any crime. Accordingly, *Addington* found that civil commitment simply does not impose either the stigma attendant to criminal culpability or the loss of liberty associated with a criminal sentence, and therefore does not require the criminal law burden of proof.

*Addington* also forecloses respondents' contention that the delinquency hearings at issue in *Winship* implicate "the exact concerns" at issue in civil commitment proceedings. Appellees' Br. at 58-60. Rather, *Addington* stressed that civil commitment proceedings involve very different concerns. In a juvenile delinquency hearing (as in an adult criminal trial) the "basic issue" turns on "whether the individual in fact committed a criminal act." *Addington*, 441 U.S. at 427-29. Resolving this single "straightforward factual question" determines whether to confine a juvenile and whether to imprison an adult and so warranted the "heavy" reasonable doubt standard. *Id.* at 428-29.

In civil commitment proceedings, "[t]here may be factual issues to resolve," but in this context, unlike criminal or delinquency proceedings, these factual issues "represent only the *beginning* of the inquiry." *Id.* at 429 (emphasis added). A court, in civil commitment proceedings, must go beyond the "beginning of the inquiry" and also determine if a person is "mentally ill," dangerous, and "in need of confined therapy." *Id.* at 429-31. When making these determinations, which "turn[ ] on the *meaning* of the facts which must be interpreted" by experts, *Addington* held the "strict, criminal standard" of proof "unnecessary." *Id.*

Respondents additionally err in contending that *Winship* requires us to overlook § 4248's "civil label" and the "govern-

ment's goal of treating individuals" and mandates the "safe-guard" of the criminal burden of proof. Appellees' Br. at 60. Again, respondents ignore *Addington*, in which the Court explained that *Winship* held only that in adult criminal or juvenile delinquency proceedings the reasonable doubt standard was necessary to minimize the risk of erroneous confinement. *Addington*, 441 U.S. at 427-28. In contrast, in the civil commitment scheme before it, the *Addington* Court found that "layers of professional review . . . and the concern of family and friends . . . provide[d] continuous opportunities for an erroneous commitment to be corrected," and so reduced the need for the rigorous reasonable doubt standard. *Id.* at 428-29.

The statute challenged here offers the same sort of professional review and opportunity for correction of an erroneous commitment, similarly reducing the need for the rigorous reasonable doubt standard. For example, § 4248 mandates discharge as soon as a person ceases to pose a danger to others. In addition to the Government's obligation to report a person's rehabilitation promptly to the court, a committed person's counsel or guardian may petition for habeas relief or ask the court to order discharge and, if denied, renew this request repeatedly every 180 days after a denial. These post-commitment procedures make for a striking contrast with the finality of criminal sentences. *See* 18 U.S.C. § 3582(b)(2006); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010).[3]

---

[3]At the conclusion of its analysis, the *Addington* Court considered respondents' sole remaining argument—that the practice in some states of adopting the criminal law standard in civil commitment proceedings provides "important" support for the view that the Due Process Clause requires this standard. Appellees' Br. at 65. The Court quickly disposed of this contention, explaining that any pattern among the states of adopting "the criminal law standard gives no assurance that the more stringent standard of proof is needed." *Addington*, 441 U.S. at 431. It concluded that the standard of proof must only "meet the constitutional minimum," which, of course, the Court held to be the "clear and convincing evidence" standard. *Id.*

In sum, respondents misread § 4248 and both *Winship* and *Addington*. They ignore the important distinctions drawn in *Addington* between civil commitment proceedings and juvenile delinquency hearings, distinctions that establish that the nature and purpose of civil commitment proceedings differ in their essence from juvenile delinquency hearings.

## IV.

Perhaps most surprising, respondents offer no justification for disregarding precedent. The closest they come to doing so is to note that the civil commitment statute challenged in *Addington*, unlike § 4248, did not require proof of *past* conduct. This is a distinction without a difference. For Supreme Court precedent has endorsed civil commitment statutes that use proof of past conduct—even past *criminal conduct*—for legitimate evidentiary purposes.

## A.

Thus, in *Kansas v. Hendricks*, the Court flatly rejected the contention that a civil commitment statute "establishe[d] criminal [rather than civil] proceedings" because it was "predicated upon *past conduct* for which [the petitioner] has already been convicted and forced to serve a prison sentence." 521 U.S. at 361 (emphasis added). *Hendricks* concluded that because the challenged statute was civil, not criminal, in nature, it did not violate the double jeopardy and *ex post facto* prohibitions of the Constitution. *Id.* at 369-71. Of course, *Hendricks* did not directly resolve respondents' burden of proof claim. But in reaching its holding, the *Hendricks* Court noted that it had "consistently upheld . . . involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards"—and then cited *Addington*. *Id.* at 357.[4] Moreover, the logic the Court

---

[4]As a matter of state law, the statute at issue in *Hendricks* required application of some criminal procedures to the civil commitment proceed-

employed in rejecting the constitutional challenges in *Hen-dricks* compels us to reject respondents' claim here.

*Hendricks* explained that the Kansas civil commitment stat-ute withstood constitutional challenge because, although it required "evidence of past sexually violent behavior," it did not seek to "*affix culpability* for prior criminal conduct." *Id.* at 357, 362 (emphasis added). Rather, the statute simply "used" evidence of prior criminal conduct "solely for evidenti-ary purposes, either to demonstrate that a 'mental abnormal-ity' exists or to support a finding of future dangerousness." *Id.* at 362. Exactly the same conclusions must be drawn with respect to the civil commitment scheme at issue here. The Act similarly does not seek to "affix culpability for prior" acts. Instead, it simply "uses" prior acts "solely for evidentiary pur-poses" to support a finding of a person's mental abnormality or future dangerousness or both. *Id.*; *see* § 4248(d).

Moreover, this very rationale—the basis for *Hendrick*'s rejection of the double jeopardy and *ex post facto* challenges —mirrors the rationale *Addington* employed in rejecting a challenge to the clear and convincing standard of proof. *Addington* recognized that civil commitment statutes may require factual findings but held that such findings represent

---

ings, including proof beyond a reasonable doubt that an individual was a sexually violent predator. *Hendricks*, 521 U.S. at 352-53. The Supreme Court, however, did not regard these criminal procedures as important to its decision to uphold the Kansas statute. Rather, as noted above, the Court cited *Addington*, 441 U.S. at 426-27, as an example of an "involuntary commitment statute" that contained constitutionally adequate "procedures and evidentiary standards." *Hendricks*, 521 U.S. at 357. Moreover, the *Hendricks* Court followed this citation by outlining at some length the pro-cedures it did find significant in the Kansas statute, never mentioning any criminal procedures or evidentiary standards. *See Hendricks*, 521 U.S. at 357-59. Furthermore, the Court expressly rejected the view that the use of criminal procedures converted a civil proceeding into a criminal prosecu-tion in which the Constitution required heightened criminal law protec-tions. *Id.* at 362, 364-65 (citing *Allen v. Illinois*, 478 U.S. 364, 371-72 (1986)).

just "the beginning of the inquiry" as evidence of future dangerousness or mental illness and thus need only be proven by clear and convincing evidence. *Addington*, 441 U.S. at 429. *Hendricks* followed that same reasoning, explaining that evidence of a prior criminal act in a civil commitment proceeding may represent an "important indicator of future violent tendencies." *Hendricks*, 521 U.S. at 358 (internal quotation marks omitted).[5]

Moreover, while the statute approved in *Hendricks* requires proof of evidence of past criminal activity, § 4248 does not even require that. Given that the requirement of evidence "of a prior *criminal* act" did not render the *Hendricks* statute criminal in nature so as to necessitate the constitutional protections afforded in criminal cases, we can hardly conclude that the requirement of evidence of a prior *bad* act in § 4248 requires such protections.[6]

---

[5]Respondents themselves concede this point—that evidence of a prior bad act serves an evidentiary purpose—but contend that the "uncertainty of the science underlying" the sexual dangerousness finding in § 4248 requires that the prior bad act finding be established by proof beyond a reasonable doubt. Appellees' Supp. Br. at 3. Of course, *Addington* focused on this very "lack of certainty" in the science to conclude that clear and convincing evidence sufficed. *Addington*, 441 U.S. at 429. Thus, respondents rely on scientific uncertainty to urge us to adopt the criminal standard of proof when the Supreme Court has expressly held this uncertainty compels rejection of that standard.

[6]To be sure, *Addington* observed that "there is a serious question as to whether the state could ever prove beyond a reasonable doubt that an individual is . . . likely to be dangerous." *Id.* at 429. The district court attempted to distinguish *Addington* on this ground, reasoning that because the prior bad act finding in § 4248 rests on "specific, knowable facts" and not the inexact conclusions of "psychiatric diagnosis," it poses no similar problem of proof. *Id.* at 429-30. Respondents do not make this argument, maybe because they recognize that *Addington* did not go so far as to suggest that a state must prove all matters based on "specific, knowable facts" beyond a reasonable doubt. To the contrary, the Supreme Court emphasized that civil commitment can "in no sense be equated to a criminal prosecution." *Id.* at 428. The addition of one required finding based on knowable facts—a finding that, as *Hendricks* held, can serve an evidentiary and nonpunitive purpose -- simply does not transform a civil commitment proceeding into a criminal trial requiring proof beyond a reasonable doubt.

Rather, the prior bad act finding works to minimize the risk of errantly committing an individual who has in the past successfully suppressed intense and recurrent sexual impulses. This finding provides a safeguard against commitment premised on inexact predictions of future dangerousness, tempering the uncertainty that accompanies psychiatric diagnosis. It seems clear to us that Congress mandated this finding for a legitimate *evidentiary* purpose: to subject a person to civil commitment under § 4248 only if his mental disorder will lead to sexual violence or child molestation in the future, a finding that must be reinforced by proof that the disorder has impelled bad sexual acts in the past.

### B.

Finally, we note that no Supreme Court precedent lends support to the contrary view.

Rather, in 1993, the Court specifically reiterated that the *civil* nature of a civil commitment proceeding warrants application of the clear and convincing standard. *Heller v. Doe*, 509 U.S. 312 (1993). Noting that "[t]he procedures required before the government acts often depend on the nature and extent of the burden or deprivation to be imposed," the Court looked to the significant differences between *Winship* and *Addington* to illustrate this point. *Id.* at 325. Because "confinement in prison is punitive and hence more onerous than confinement in a mental hospital," *Winship* held that "the Due Process Clause subjects the former to proof beyond a reasonable doubt" while *Addington* requires "in the latter case only clear and convincing evidence." *Id.*

Similarly, in 1986, the Court declined to introduce criminal procedures into a civil commitment proceeding. *See Allen v. Illinois*, 478 U.S. 364 (1986). *Allen* found a reduced need for such safeguards when the government treats and incapacitates sexually dangerous persons for nonpunitive purposes. *Id.* at 372-73.

Perhaps most striking, in the forty years since it issued *Winship*, the Supreme Court has not once held that the criminal standard of proof applies in *any* civil commitment proceeding—or indeed any kind of civil proceeding—other than juvenile delinquency hearings. Indeed, *Addington* itself noted that the Court has not required use of the criminal law standard even "to protect particularly important individual interests." *Addington*, 441 U.S. at 424 (citing *Woodby v. INS*, 385 U.S. 276, 285 (1966) (deportation); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization); *Schneiderman v. United States*, 320 U.S. 118, 125 (1943) (same)). In each of these cases, the Court instead applied a variation of the "clear and convincing" standard mandated by § 4248.

## V.

For all of these reasons, we cannot conclude that respondents have met their heavy burden of demonstrating that the "clear and convincing evidence" standard mandated by § 4248 renders the statute unconstitutional on its face. Rather, at the very least, the challenged provision "has a plainly legitimate sweep." *Crawford*, 553 U.S. at 202. Accordingly, we must reverse the judgment of the district court and remand these cases for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*