**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 16-6291

UNITED STATES OF AMERICA,

          Petitioner - Appellee,

     v.

DONALD MACLAREN,

          Respondent – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Malcolm J. Howard, Senior District Judge. (5:09−hc−02164−H)

Argued: May 11, 2017                         Decided: August 2, 2017

Before GREGORY, Chief Judge, and DUNCAN and DIAZ, Circuit Judges.

Vacated and remanded by published opinion. Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Duncan joined.

**ARGUED:** Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Michael Lockridge, BUREAU OF PRISONS, Butner, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. John Stuart Bruce, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIAZ, Circuit Judge:

Donald Maclaren, who is civilly committed pursuant to the Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. § 4248, appeals the district court's order denying his motion for a discharge hearing. Because we conclude that the district court applied an incorrect standard for determining whether someone confined pursuant to the Adam Walsh Act is entitled to a discharge hearing, we vacate the court's judgment and remand so that it can apply the correct standard in the first instance.

I.

A.

In December 2009, the government certified Maclaren as a sexually dangerous person pursuant to the Adam Walsh Act. In February 2013, a court in the Eastern District of North Carolina held that the government had met its burden of proving by clear and convincing evidence that Maclaren was subject to civil commitment pursuant to the Act and committed him to the custody and care of the Attorney General.

In its order, the district court recounted Maclaren's personal history and alleged sexual offense history[1] before turning to the three elements that the government must establish before obtaining a commitment order. Those elements are "that the person (1) has engaged or attempted to engage in sexually violent conduct or child molestation, (2)

---

[1] "Maclaren is believed to have sexually abused more than thirty-eight children over a span of more than forty years." J.A. 36.

2

suffers from a serious mental illness, abnormality, or disorder, and (3) as a result, would have serious difficulty refraining from sexually violent conduct or child molestation if released." *United States v. Comstock*, 627 F.3d 513, 515–16 (4th Cir. 2010).

With respect to the first element, the district court found that there was "no dispute in this case that Maclaren has previously engaged in or attempted to engage in acts of child molestation or sexually violent conduct." J.A. 42. As for the second element, the court said that "the government's evidence is of such a weight that it produces a firm belief or conviction that Maclaren suffers from pedophilia." J.A. 44 (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. text rev. 2000) (hereinafter DSM-IV-TR)).

Turning to the third element, the court began by recounting factors that could aggravate Maclaren's risk of re-offense. Among other things, Maclaren had a "prolific pattern of highly deviant sexual behavior" commencing "[f]rom the time he was a young child until he was incarcerated at the age of fifty-four," J.A. 46, he "refuse[d] to accept full responsibility for his actions," J.A. 48, and his "cognitive distortions regarding his behavior" led him to think of "himself as a protector of children and a caring parental figure," J.A. 49.

But there were also factors that could mitigate his risk of re-offense—"his advancing age and physical limitations." J.A. 50. The court questioned the usefulness of those factors in this instance, however. Given the magnitude of the "child pornography and sexual activities in which Maclaren was involved immediately before his incarceration at the age of fifty-four," he appeared to fall outside of "the normal age

3

trajectory" for sexual offenders wherein recidivism decreases with age. J.A. 50. And though he suffered from several physical impairments, they did not appear to be "so severe as to prevent him from engaging in child molestation." J.A. 50. Finally, though the experts disagreed on his risk of re-offense, they "[a]ll acknowledge[d] that the use of actuarial instruments is less than ideal in Maclaren's case." J.A. 50–51.

Ultimately, the district court held that the government had established the third element. Maclaren's inabilities to "appreciate the breadth and severity of his pedophilia," develop a "meaningful relapse prevention plan," and acquire "the skills necessary to overcome his sexually deviant urges" were dispositive. J.A. 52. The court acknowledged the government's representation that "if Maclaren is committed as a sexually dangerous person, the government anticipates filing a request for his conditional release." J.A. 53–54. The court, however, "offer[ed] no opinion as to the viability of the government's proposed regimen or the likelihood of success of any conditional release motion." J.A. 54.

B.

Maclaren has been confined at the Federal Correctional Institution at Butner, North Carolina ("FCI Butner") since his commitment. In October 2015, pursuant to 18 U.S.C. § 4247(h), Maclaren, by and through counsel, filed a motion requesting a hearing to determine whether he should be discharged under a conditional release plan. Maclaren noted that the government had never moved for conditional release, as it had represented to the court that it would, and that "the government has failed to adequately explain why this is so." J.A. 68. Referring to things as they stood when the government made its

4

representation, Maclaren argued that "[n]othing has changed since [his] commitment—indeed, his risk factors have only decreased with time." J.A. 68.

Maclaren also submitted an expert report by Dr. Luis Rosell, a licensed psychologist. Dr. Rosell evaluated Maclaren in June 2015 and concluded that Maclaren qualified for discharge because, though he suffered from pedophilic disorder, he would not have "serious difficulty refraining from sexually violent conduct or child molestation." J.A. 66. Dr. Rosell based that conclusion upon, among other things: (1) the American Psychiatric Association's release of the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (the DSM-V), which, unlike the DSM-IV-TR, does not characterize pedophilia as a lifelong condition; (2) a variety of actuarial models; and (3) Maclaren's age and poor health.

The government opposed the motion. It argued that Maclaren hadn't responded to information requests for the purpose of conditional release planning and that he had "continually elected not to participate in treatment." J.A. 74. The government took issue with Dr. Rosell's report, contending that it "points to no improvement in [Maclaren's] mental condition since his commitment or in his ability to refrain from sexually reoffending if released." J.A. 77. The government also directed the district court to the 2015 report by its forensic evaluator which showed that Maclaren "has not made any progress in addressing his dynamic risk factors, given that he has refused sex offender treatment since his commitment." J.A. 78. Two days before the district court ruled on the motion, the government separately filed the 2016 report by its forensic evaluator,

which concluded that Maclaren was still a sexually dangerous person who should remain committed.

The district court denied Maclaren's motion for a hearing. After surveying orders issued by other judges in the Eastern District of North Carolina, the district court set the bar for obtaining a hearing as follows: "a request for a hearing pursuant to § 4247(h) must, *inter alia*, state with particularity 'the extent to which . . . Respondent's psychological/psychiatric condition has improved since he was committed' and 'what, if anything, Respondent has done to meet the conditions of release specified in § 4248(d)(2).'" J.A. 83 (quoting *United States v. Barrett*, No. 5:07-HC-2097, ECF 132, at 6 (E.D.N.C. Oct. 30, 2012)).

The district court acknowledged but gave little weight to Dr. Rosell's report because it did not discern any "specific changes identified which might mitigate [Maclaren's] risk for re-offending" other than his "increasing age due to the passage of time." J.A. 84. Conversely, it noted that the government's forensic evaluator continued to characterize Maclaren as sexually dangerous. Finally, the court invoked Maclaren's failures to provide information regarding a release plan and to participate in a treatment program as reasons for denying a hearing.

This appeal followed.

6

II.

What an Adam Walsh Act detainee must do to secure a discharge hearing under § 4247(h) is a question of law.[2] Thus, our review is de novo. *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016). Maclaren says that a successful motion for a discharge hearing need only plausibly allege that the detainee is entitled to discharge. We agree.

A.

As always, we begin with the text. While § 4247(h) provides a way for a variety of committed people—Adam Walsh Act detainees and persons found not guilty only by reason of insanity under 18 U.S.C. § 4243, among others—to challenge their commitment, our analysis is limited to the relationship between § 4247(h) and the Adam Walsh Act.[3] Section 4247(h) provides in relevant part that

> counsel for [an Adam Walsh Act detainee] or his legal guardian may, at any time during such person's commitment, file with the court that ordered the commitment a motion for a hearing to determine whether the person should be discharged from such facility, but no such motion may be filed within one hundred and eighty days of a court determination that the person should continue to be committed.

18 U.S.C. § 4247(h).

---

[2] The question is one of first impression across the circuits.

[3] In total, § 4247(h) applies to those committed under 18 U.S.C. §§ 4241, 4243, 4244, 4245, 4246, and 4248. As far as we are aware, there is no reported circuit decision on what someone must show in a § 4247(h) motion to secure a hearing with respect to any of these statutes.

7

At the hearing contemplated in § 4247(h), "[t]he person shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." *Id.* § 4247(d); *see also id.* § 4248(e) (providing that an Adam Walsh Act discharge hearing shall be "conducted pursuant to the provisions of section 4247(d)"). This mechanism for requesting a discharge hearing complements the requirement that FCI Butner's Director "promptly" notify the court if he or she "[(1)] determines that the person's condition is such that he is no longer sexually dangerous to others, or [(2)] will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment." *Id.* § 4248(e).

After the Director so notifies the court, the court "shall order the discharge of the person or, on motion of the attorney for the Government or on its own motion, shall hold a hearing." *Id.* If, in the event of a hearing, "the court finds by a preponderance of the evidence that the person's condition is such that" one of the two elements above is satisfied, the court shall order immediate or conditional discharge. *Id.* § 4248(e)(1)–(2).

While § 4247(h) allows an Adam Walsh Act detainee to submit a motion requesting a discharge hearing, it says nothing about the motion's contents or the standard for securing a hearing. We do know, however, how the discharge hearing works. The detainee can, among other things, present evidence, testify, and cross-examine witnesses, and the court must find by a preponderance of the evidence that one of two conditions is met before ordering immediate or conditional discharge.

8

The lesson from the text is that the discharge hearing, rather than the motion requesting one, is the place to meet strict evidentiary burdens. It would be redundant to require Maclaren to make the same evidentiary showing in the motion requesting a hearing and at the hearing, and illogical to think that Congress so intended given that it defined the hearing's evidentiary framework but said nothing about the motion's requirements. *Cf. Va. Uranium, Inc. v. Warren*, 848 F.3d 590, 596 (4th Cir. 2017) (noting that "the canon of *expressio unius est exclusio alterius* may apply where 'it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it'" (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). Similarly, it's at the discharge hearing rather than in its review of a § 4247(h) motion that a district court should make findings of fact. By making findings of fact based on a § 4247(h) motion a court short-circuits the discharge hearing's evidentiary purpose.

In our view, Maclaren's procedural posture is most analogous to that of a civil plaintiff who files a complaint. Maclaren effectively seeks to bring a claim for discharge. A § 4247(h) motion is his vehicle for doing so and he must defeat the government's challenge to his motion if his claim is to advance to an evidentiary hearing. That is similar to a plaintiff's filing a complaint and then having to overcome a defendant's Rule 12(b)(6) motion to dismiss before proceeding to discovery. Finally, while it may be tempting to compare Maclaren to a habeas petitioner, the text forecloses such analogies since "[n]othing contained in section . . . 4248 precludes a person who is committed under . . . [that] section[] from establishing by writ of habeas corpus the illegality of his detention." 18 U.S.C. § 4247(g). Once again, it would be illogical to conclude that

9

Congress intended for the strict procedural requirements of a habeas motion to apply to a § 4247(h) motion, given that it left the habeas process open to Adam Walsh Act detainees as a separate way to challenge their detention.

As such, we hold that the plausibility-pleading framework for resolving Rule 12(b)(6) challenges to a complaint is equally appropriate for assessing an Adam Walsh Act detainee's § 4247(h) motion. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Given that the requested relief is discharge, a district court should grant a § 4247(h) motion for a § 4248 discharge hearing if the motion contains sufficient factual matter, accepted as true, to state a claim for discharge that is plausible on its face.

In making that determination a district court should, among other things, accept as true all well pleaded facts in the motion and construe them in the light most favorable to the detainee. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (describing the pleading standard for a civil complaint). But the court need not accept as true legal conclusions phrased as factual allegations, "unwarranted inferences," "unreasonable conclusions," and "naked assertions devoid of further factual enhancement." *Id.*; *cf. United States v. Iaquinta*, No. 5:98-HC-764-BR, 2014 WL 12514789, at *2 (E.D.N.C. Feb. 10, 2014) (denying § 4247(h) motion submitted by 18 U.S.C. § 4246 detainee where "the only argument proffered by respondent in support of his motion for hearing was that 'more than 180 days have passed' since the court's most

10

recent determination that respondent should continue to be committed"), *aff'd*, 581 F. App'x 264 (4th Cir. 2014); *United States v. Mendez*, No. 5:91-HC-350-BR, ECF 184, at 2 (E.D.N.C. Dec. 11, 2013) (granting government's motion for reconsideration and vacating previous order granting § 4247(h) motion submitted by § 4246 detainee where only argument in motion was that more than 180 days had passed since the court's last commitment determination), *aff'd*, 565 F. App'x 261 (4th Cir. 2014).

B.

The district court required Maclaren to "state with particularity 'the extent to which . . . [his] psychological/psychiatric condition has improved since he was committed' and 'what, if anything, [he] has done to meet the conditions of release specified in § 4248(d)(2).'" J.A. 83 (quoting *Barrett*, No. 5:07-HC-2097, ECF 132, at 6). *Barrett*, in turn, dealt with an Adam Walsh Act detainee's § 4247(h) motion which contained just one argument in support: "more than six months have passed since the date of his commitment." No. 5:07-HC-2097, ECF 132, at 2.

The district court in *Barrett* denied the motion "because it [was] not properly supported." *Id.* at 5. Specifically, the motion didn't comply with Federal Rule of Civil Procedure 7, which provides that a motion must "state with particularity the grounds for seeking the order," Fed. R. Civ. P. 7(b)(1)(B), or the Local Rules for the Eastern District of North Carolina, which, inter alia, provide that a motion's supporting memorandum must contain an argument "with appropriate citations," E.D.N.C. Civ. R. 7.2(a)(3). *See Barrett*, No. 5:07-HC-2097, ECF 132, at 5–6. The court concluded by explaining the motion's deficiencies, including that it did not provide "the standard governing a request

11

for" a § 4247(h) hearing, explain "the extent to which, if at all, [his] psychological/psychiatric condition has improved since he was committed," or point to "what evidence, if any, he can produce to meet [his] burden" at a discharge hearing. *Id.* at 6.

The district court here effectively turned *Barrett*'s discussion about a § 4247(h) motion's noncompliance with procedural rules into a substantive standard for securing a § 4247(h) discharge hearing. Among other departures, the district court drew inferences against Maclaren and weighed the facts he alleged against those proffered by the government. That approach is problematic because, while there's nothing wrong with enforcing rules of procedure, those rules are no substitute for the statutory text's lesson about how a court should assess a § 4247(h) motion. The district court's standard neither reflects the statute's emphasis on the discharge hearing as the place for strict evidentiary burdens and fact-finding nor accounts for the similarities between Maclaren and a plaintiff who has filed a complaint. Instead, it's the outcome of misusing generally applicable procedural rules as the foundation for a substantive standard governing a discrete aspect of litigation.[4]

\*\*\*

On remand, the district court's task will be to decide whether Maclaren's motion contains sufficient factual matter, accepted as true, to state a claim for discharge that is

---

[4] We also reject the government's alternative suggestion that something analogous to a summary judgment standard should apply. *See supra* Part II.A (explaining that the discharge hearing is the place for findings of fact).

plausible on its face. Finally, we note the government's contention that "Maclaren did not proffer any facts to the district court showing there had been a change in his circumstances suggesting that he would no longer be sexually dangerous to others if released." Appellee's Br. at 16. Among other reasons for that being the case, the government says that "[t]he district court was aware of Maclaren's age and medical conditions" when it ordered him committed. *Id.* But this line of reasoning assumes that the probative value of factors which the district court considered at commitment (here, age and health) cannot change either through the passage of time or due to intervening developments in our understanding of them (here, the switch from the DSM-IV-TR to the DSM-V). Whether such changes suffice to produce a different outcome for Maclaren is a question to resolve at the discharge hearing, should the district court grant one under the standard we announce.

*VACATED AND REMANDED*