**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-6338**

GERALD WAYNE TIMMS,

Petitioner – Appellant,

v.

U. S. ATTORNEY GENERAL,

Respondent – Appellee.

ERICA JOAN HASHIMOTO,

Court-Assigned Amicus Counsel.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:21−hc−02145−BO)

Argued:  October 24, 2023                Decided:  February 14, 2024

Before THACKER and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed as modified by published opinion. Judge Quattlebaum wrote the opinion in which Judge Thacker and Judge Keenan joined.

**ARGUED:**  Erica Joan Hashimoto, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Court-Appointed Amicus Counsel.  Katharine Paige O'Hale,

OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.
**ON BRIEF:**  Tara S. Mahesh, Student Counsel, Edward McAuliffe, Student Counsel, Audrey Hope Sheils, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Court-Appointed Amicus Counsel. Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

After completing his sentence for a child pornography conviction, Gerald Wayne Timms was civilly committed as a sexually dangerous person under the statutory provisions enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. §§ 4247–48. While civilly committed, Timms was convicted of and sentenced for two separate federal crimes and served prison terms for those sentences. His civil commitment continued following those criminal sentences. Timms argues it should not have. So, he petitioned for habeas relief under 28 U.S.C. § 2241, claiming that his civil commitment terminated when his first criminal sentence began, that certain conditions of his criminal confinement violate the requirements of the Act and that applying the Act to him violated his constitutional rights. The district court dismissed his petition for failure to exhaust, reasoning that Timms should have raised these issues in his civil commitment proceedings. Timms appeals that order.

Timms' appeal requires us to decide what happens if a person civilly committed under the Act as a sexually dangerous person commits a criminal offense and is sentenced to a prison term.[1] Does such a criminal conviction and resulting imprisonment terminate the civil commitment? At the conclusion of the criminal sentence, must the person be released unless the government recertifies him as sexually dangerous and obtains a new order of civil commitment? In short, the answer to both questions is no. Under the Act, a

---

[1] We have appellate jurisdiction under 28 U.S.C. § 1291 over the final judgment of the district court denying Timms' petition. We review the denial of a § 2241 petition de novo. *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 530 (4th Cir. 2005).

3

person ordered to be civilly detained after a finding of sexual dangerousness remains committed until a court finds that he is no longer sexually dangerous.[2] Otherwise, the person's civil commitment continues. The intervening criminal sentence has no impact on it. Exhaustion aside, Timms fails to state a claim for relief. So, we affirm the district court's dismissal of Timms' petition.

## I.

The Adam Walsh Act authorizes the civil commitment of a person who is "in the custody of the Bureau of Prisons, or who has been committed to the custody of the Attorney General" and who has been certified as a "sexually dangerous person." 18 U.S.C. § 4248(a). The Attorney General, his designee or the Director of the Bureau of Prisons initiates the civil commitment process by certifying to the district court that an individual "is a sexually dangerous person." *Id.* The certification stays the inmate's release from federal custody pending a court-ordered hearing on whether the government can establish that the person is sexually dangerous. *Id.*

The Act defines a "sexually dangerous person" as "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." *Id.* § 4247(a)(5). A person is "sexually dangerous to others" if "the person suffers from a serious mental illness, abnormality, or disorder as a result of which

---

[2] A state can assume civil commitment responsibility for a sexually dangerous person. *See* 18 U.S.C. § 4248(d), (g). But no state has assumed such responsibility for Timms. So, those statutory provisions are not relevant to this appeal.

he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *Id.* § 4247(a)(6). "If, after the hearing, the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General," unless a state assumes responsibility. *Id.* § 4248(d); *Matherly v. Andrews*, 817 F.3d 115, 117 (4th Cir. 2016).

If a state does not take responsibility for the sexually dangerous person, however, the Attorney General must place the person in a "suitable facility." 18 U.S.C. § 4248(d). A "suitable facility" means "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." *Id.* § 4247(a)(2); *see also id.* § 4247(i)(C).[3]

Once a person has been civilly committed, the relevant statutory provisions provide two ways to terminate that commitment. One, under § 4248(e), when the director of the facility where the person is placed determines that the "person's condition is such that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen" of care or treatment for his condition, the director

---

[3] The Act contains other requirements. "As long as the Attorney General holds the person pursuant to a § 4248 commitment order, the Act requires the director of the facility to which the person is committed to prepare annual reports on the mental condition of the person and whether the need for the person's continued commitment persists." *United States v. Comstock*, 627 F.3d 513, 516 (4th Cir. 2010). Those reports must be sent to the district court that ordered the commitment. 18 U.S.C. § 4247(e)(1)(B). The director of the facility also must notify the civil detainee of any available rehabilitation programs. *Id.* § 4247(e)(2).

5

"shall promptly file a certificate to that effect" with the district court that ordered the commitment. *Id.* § 4248(e). The court then "shall order the discharge" or, on the government's motion or the court's own motion, hold a hearing to determine whether discharge is appropriate. *Id.* "If the court finds by a 'preponderance of the evidence' that a committed person is no longer sexually dangerous to others if released unconditionally or if released under a prescribed regimen of treatment, then the court must order the appropriate discharge." *United States v. Comstock*, 627 F.3d 513, 516 (4th Cir. 2010) (quoting 18 U.S.C. § 4248(e)).

Two, under § 4247(h), a civilly committed person—through counsel or a legal guardian—may petition the court every 180 days for a hearing to determine whether the person should be discharged. *See* 18 U.S.C. § 4247(h); *United States v. Searcy*, 880 F.3d 116, 120 (4th Cir. 2018).[4]

## II.

Timms insists that his intervening criminal conviction and imprisonment terminated his civil commitment.[5] But under the Act, Timms' civil commitment can be terminated

---

[4] And, as recognized by the Act, a civilly committed person may file a writ of habeas corpus under § 2241, as Timms has done here, to challenge the illegality of his detention. *See* 18 U.S.C. § 4247(g) (nothing contained in the statutory provisions precludes seeking habeas relief).

[5] The procedural history of Timms' civil commitment, criminal convictions and various habeas petitions is lengthy and complex. *See generally Timms v. Johns*, 627 F.3d 525, 527, 533 (4th Cir. 2010); *United States v. Timms*, 684 F. App'x 341, 342 (4th Cir. 2017) (per curiam); *Timms v. Sullivan*, 824 F. App'x 184 (4th Cir. 2020) (per curiam);

6

only if a court—after his facility director files a certificate under § 4248 or he files a petition under § 4247—finds that he is no longer sexually dangerous. That has not happened.

In fact, twice Timms has tried unsuccessfully to convince a court to discharge him. In 2016, Timms moved for a review hearing under § 4247(h), arguing he should be released because he was no longer sexually dangerous. In response, the court conducted a § 4247(h) review hearing but concluded that Timms failed to demonstrate that he was no longer a sexually dangerous person. Then, in 2023, the district court—in response to Timms' motion for a second review hearing—again denied Timms' request for release. In reaching this result, it explained that Timms "has not participated in sex offender treatment" and continues to suffer from "serious mental illness [and] will have difficulty refraining from child molestation or sexually violent conduct if released."[6] S.A. 20.

Thus, Timms has not been able to satisfy his burden to show, by a preponderance of the evidence, that he is no longer sexually dangerous. *See United States v. Vandivere,*

---

*United States v. Timms*, 844 F. App'x 658, 659 (4th Cir. 2021) (per curiam). While that background contextualizes our decision today, it does not affect our reasoning. We do, however, highlight a few points. Timms was committed under the Act in October 2012 after the district court found that he suffered from a serious disorder that would make it difficult for him to refrain from sexually violent conduct or child molestation if released. He moved for judicial review pursuant to § 4247(h) to determine whether he should be discharged from civil commitment. But before a hearing could be held, Timms was found guilty of possessing contraband in May 2016. He was sentenced to 30 months' incarceration and supervised release. Then, in June 2020, Timms was convicted for possessing a weapon and was again sentenced to 30 months and supervised release. He filed the instant habeas petition on July 14, 2021.

[6] Timms appealed the district court's recent order denying his motion for discharge but later voluntarily dismissed the appeal through counsel, indicating that he preferred to pursue alternative relief in the district court.

7

88 F.4th 481, 489 (4th Cir. 2023). So, he properly remains civilly committed. If Congress wants to amend the Act to provide that an intervening criminal sentence terminates a civil commitment, it of course can do that. But unless and until it does, we follow the Act rather than judicially amend it. *See United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (explaining that in interpreting statutes, we strive to implement congressional intent by examining the plain language of the statute, and absent ambiguity or clearly expressed intent to the contrary, we are to give the statute its plain meaning).

What's more, imagine if Timms were right. A civilly committed person could unilaterally end his commitment outside the specific statutory bounds by committing a crime during the commitment period. Not only would that be counter-textual; it would be absurd. And when possible, we construe statutes to avoid absurd results. *United States v. Rendelman*, 641 F.3d 36, 45 (4th Cir. 2011).

Undeterred, Timms makes a slightly different argument on appeal. Even if the criminal convictions and sentences did not terminate his civil commitment, Timms argues that the Attorney General failed to meet his statutory obligation to detain him in a suitable facility. That is, Timms insists that his civil commitment necessarily ended when he was moved from a suitable civil commitment facility to criminal incarceration in what he claims was an unsuitable facility.

But this argument also fails. Under the Act, the Attorney General "shall, before placing a person in a facility . . . , consider the suitability of the facility's rehabilitation programs in meeting the needs of the person." 18 U.S.C. § 4247(i)(C). And the Act defines a suitable facility as one "that is suitable to provide care or treatment given the nature of

8

the offense and the characteristics of the defendant." *Id.* § 4247(a)(2). Timms'

"characteristics" necessarily include the criminal offenses he carried out while civilly

committed. Timms points to nothing in the record showing that the facility was unsuitable

in light of those criminal offenses.[7]

In sum, Timms properly remains in civil commitment. That status was not severed

by his criminal convictions or sentences nor was the Attorney General required to seek

recommitment following those sentences. Timms has not satisfied the statutory

requirements for discharge. For those reasons, Timms fails to state a claim for relief under

28 U.S.C. § 2241. The district court correctly dismissed Timms' petition.[8]

---

[7] While not a basis for our decision, despite his current suitability challenge, Timms did not challenge the suitability of the facility in which he served his criminal sentences following his 2016 and 2020 convictions, nor did he allege he could not receive desired treatment options and appropriate conditions there. Likewise, before and after his criminal incarceration, Timms has not engaged in any of the programming available to him.

[8] Timms also challenges his confinement conditions. He claims "detainees are treated differently than not only state civil detainees, but those who refuse to participate in treatment are housed in a separate unit, refused portions of privileges allowed to persons participating in treatment, forced to wear uniforms, where treatment participants are not, are forced to be separated from other persons who participate and essentially punished for refusing sex offender treatment." J.A. 17. He also complains about having been placed in quarantine and having been refused "commissary privileges afforded to persons serving a sentence in general population." J.A. 18. The Supreme Court has not yet decided whether detainees can challenge their confinement conditions via a habeas petition. *See Ziglar v. Abbasi*, 582 U.S. 120, 144–45 (2017) ("[W]e have left open the question whether [detainees] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal."). In several unpublished decisions, we have held that claims challenging conditions of confinement cannot be brought in habeas petitions. *See, e.g., Wilborn v. Mansukhani*, 795 F. App'x 157, 164 (4th Cir. 2019) (per curiam) (finding "[t]his case

9

III.

Accordingly, we affirm the district court in dismissing Timms' petition for habeas relief on the grounds that Timms' claims are without merit and fail to state a claim for relief.[9]

*AFFIRMED AS MODIFIED*

---

presents no basis to deviate from our previous holdings" and concluding that inmate's claim to have the BOP reconsider where he was housed is not one that would fall within the scope of habeas); *see also Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2017) (per curiam) (holding that an inmate's challenge to his transfer to a maximum-security facility was "not a cognizable § 2241 claim, because th[e] petition challenge[d] the conditions of his confinement, not its fact or duration"). But even assuming, without deciding, that habeas is an appropriate mechanism for Timms to challenge his conditions of confinement, Timms has not alleged facts that the conditions of confinement were imposed with an express intent to punish, as opposed to necessary functions incident to the legitimate nonpunitive government objective of confining individuals who are sexually dangerous. As a result, he has failed to allege facts that his confinement was unconstitutional. *See Matherly v. Andrews*, 859 F.3d 264, 275 (4th Cir. 2017) (holding that to establish that a particular condition or restriction of confinement is unconstitutional, a civil detainee must show that the condition or restriction was imposed with an express intent to punish or was not reasonably related to a legitimate nonpunitive government objective).

[9] We affirm the dismissal without reaching the district court's ruling on exhaustion, as we are not limited to evaluating the grounds offered by the district court to support its decision and may affirm on any grounds apparent from the record. *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006); *see also Dragenice v. Ridge*, 389 F.3d 92, 98 (4th Cir. 2004) (recognizing that the exhaustion rule requiring dismissal is not jurisdictional).