**Betty Jean HUGHES (Widow of Teddy V. Hughes), Claimant-Respondent,**

v.

**HEYL & PATTERSON, INC., Employer-Petitioner,**

and

**Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondent.**

No. 78–1563.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1980.

Decided April 29, 1981.

Daniel M. Curtin, Pittsburgh, Pa. (Strassburger & McKenna, Pittsburgh, Pa., on brief), for employer-petitioner.

Roger M. Siegel, U. S. Dept. of Labor, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Judith E. Wolf, Co-Counsel for Black Lung Ben., Washington, D. C., on brief), for respondent.

C. Patrick Carrick, Bakersfield, Cal. (Ross Maruka, Fairmont, W. Va., on brief), for claimant-respondent.

Before WIDENER and SPROUSE, Circuit Judges, and C. WESTON HOUCK, United States District Judge for the District of South Carolina, sitting by designation.

HOUCK, District Judge:

This matter is before the court on the petition filed by Heyl & Patterson, Inc. seeking review of a decision of the Benefits Review Board of the United States Department of Labor, which upheld an administrative determination that Heyl & Patterson, Inc. was liable for the payment of federal black lung benefits as a result of the disability and death of its employee, Teddy V. Hughes. This court has jurisdiction under 30 U.S.C.A. § 932(a), incorporating 33 U.S. C.A. § 921.

Since all of the parties have now admitted that Teddy V. Hughes was disabled by and died of pneumoconiosis (black lung), and that his widow is entitled to black lung benefits under Title IV, Part C, of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C.A. §§ 901, et seq. (1970), as amended by the Black Lung Benefits Act of 1972, P.L. No. 92–303, 86 Stat. 150 (1972) (current version at 30 U.S.C.A. §§ 901, et seq. (Supp.1980), the sole question before the court is by whom should the benefits be paid. If Heyl & Patterson, Inc. is a coal mine operator as defined in the applicable statute, which was the conclusion reached

by the Benefits Review Board, then Heyl & Patterson, Inc. is liable for payment of the black lung benefits. If, on the other hand, Heyl & Patterson, Inc. is not a coal mine operator, then the payments will be made by the Department of Labor. 30 U.S.C.A. § 934 (1970).

The facts in this case were presented through testimony and documentary exhibits introduced before a hearing officer of the United States Department of Labor in Morgantown, West Virginia, on December 3, 1977. It is undisputed that Teddy Hughes worked as a field construction superintendent for Heyl & Patterson, Inc. from late in 1968 until June of 1975. Heyl & Patterson, Inc. is an engineering and construction firm headquartered in Pittsburgh, Pennsylvania. While Heyl & Patterson, Inc. does some work unrelated to mining, it also designs and builds coal preparation plants. Coal preparation plants are facilities used by mine operators to clean and size coal after it is brought to the surface in order to prepare it for sale. In his job as a field superintendent for Heyl & Patterson, Inc., Teddy Hughes supervised construction laborers in the erection and repair of coal preparation facilities.

After examining the evidence before it, the Benefits Review Board made several factual findings concerning the relationship of constructing and repairing coal preparation plants to the operation of coal mines, which were clearly supported by substantial evidence. The Board specifically concluded that Heyl & Patterson's work on coal preparation plants involved not only the building of totally new facilities, but also the repairing and enlarging of existing facilities. The majority of Heyl & Patterson's repair work was done while the mine and coal preparation facility remained operational, even though at times it was done during holidays when the mine was shut down. Even when the operation of the mine has been shut down, however, a coal preparation plant usually contains an accumulation of coal dust to which employees of Heyl & Patterson, Inc. are exposed while performing repairs. Similar exposure to coal dust also occurs when Heyl & Patterson, Inc.

participates in enlarging existing facilities since both the mine and the existing preparation facilities usually continue to operate while the addition is being constructed. When Heyl & Patterson, Inc. builds a totally new facility, construction generally takes approximately a month, and the employees of Heyl & Patterson, Inc. would generally not be exposed to coal dust during this phase. After the construction is completed Heyl & Patterson, Inc. stays on the job site for six to eight months for the start-up phase of the operation. During this period of time the preparation plant begins processing coal, and it is Heyl & Patterson's function to train the permanent staff in the operation of the preparation plant and to resolve problems which arise. In addition, during the start-up period, Heyl & Patterson, Inc. controls whether the preparation plant, and therefore the mine, remains in operation.

■ The question before this court is whether, in this factual setting, Heyl & Patterson, Inc. is a coal mine operator within the meaning of the applicable statutes. If this case were to arise today, the answer to this question would be easily provided by the statutory definition of operator found in 30 U.S.C.A. § 802(d) (Supp.1980), as amended by the Federal Mine Safety and Health Act of 1977. This amendment, which became effective one hundred twenty (120) days after its approval on November 9, 1977, specifically includes as an operator "... any independent contractor performing services or construction at such mine." The Department of Labor attempts to gain the benefit of this amendment in the present controversy, even though Teddy Hughes' claim was filed long before the passage of the amendment. They argue that the amendment should be applied retroactively under the doctrine of *Bradley v.*

*Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). It is clear under *Bradley* "... that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. While the application of the current law would certainly provide an easy solution to the questions before us, this court is convinced that the 1977 amendment falls within the exceptions set out in the *Bradley* rule. Specifically, we are convinced that the application of the current definition of operator to a claim filed prior to the enactment of the amendments would result in manifest injustice. The new definition contained in the amendment brings within the scope of the act some people and companies which were not considered operators under the old act.[1]

Because of the consequences of being considered an operator under the statutes, injustice would result from retroactive application of the expanded definition. An operator is exposed to civil liability for violations of the health or safety standards of the act; therefore, persons could be held liable for the violation of standards which they properly believed were not applicable to them at the time of their acts. 30 U.S.C.A. § 820 (Supp.1980). Similarly, because of an operator's liability for black lung benefits under 30 U.S.C.A. § 932 (Supp.1980), the retroactive application of the expanded definition would deny those persons brought under the act by the expansion the opportunity to obtain insurance coverage for such liability. The manifest injustice of these outcomes is obvious. Accordingly, the law as it existed at the time Teddy Hughes' claim was filed must be applied in this case.[2]

Before determining whether Heyl & Patterson, Inc. is an operator under the appli-

---

1. The old act, as found in 30 U.S.C.A. § 802(d) (1970), provided as follows:

 (d) "operator" means any owner, lessee, or other person who operates, controls, or supervises a coal mine;

 The new amendment provides in 30 U.S.C.A. § 802(d) (Supp.1980) as follows:

 (d) "operator" means any owner, lessee, or other person who operates, controls, or su-

pervises a coal or other mine or any independent contractor performing services or construction at such mine;

 *See* note 5 *infra* for a discussion of the expanded nature of the amended definition.

2. In deciding not to apply the 1977 amendment to this case, we have also considered by analogy the earlier decisions, including our own,

cable law, we must first determine whether the Department of Labor is estopped from contending that Heyl & Patterson, Inc. is liable for the black lung benefits as a coal mine operator, because the same issue was decided against it in *National Independent Coal Operators' Association v. Brennan*, 372 F.Supp. 16 (D.D.C.1974) (three-judge court) [hereinafter cited as *Brennan*]. It is the position of Heyl & Patterson, Inc. that this question should be answered in the affirmative and that upon doing so, we need not address the problem of determining whether it was a mine operator under the pre-1977 statutes. Heyl & Patterson, Inc. asserts that the Department of Labor should be precluded from even arguing that Heyl & Patterson, Inc. is a coal mine operator because of the doctrine of collateral estoppel, or estoppel by judgment. If the doctrine of collateral estoppel is applicable to the situation at bar, the outcome asserted by Heyl & Patterson, Inc. would certainly be correct.

 The doctrine of collateral estoppel precludes a party against whom an issue has been decided in a prior final judgment from relitigating its rejected position in a subsequent proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Of course, the threshold inquiry in examining the applicability of collateral estoppel is whether the issues litigated in the first and second actions are in substance the same. In order for collateral estoppel to operate as Heyl & Patterson, Inc. asserts it should, we must conclude that the " 'question expressly and definitely presented in this suit is the same as that definitely and actually litigated and adjudged' " adversely to the Department of Labor in the *Brennan* case. *Montana v. United States*, 440 U.S. 147, 157, 99 S.Ct. 970, 976, 59 L.Ed.2d 210 (1979), *quoting*

*United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed.2d 262 (1924). An examination of the decision in *Brennan* and a comparison of the issues therein litigated to those now before us convince this court that there is no identity of issues, and collateral estoppel is not applicable.

The decision in *Brennan* addressed whether a regulation adopted by the Secretary of Labor was consistent with the statutory definition of a coal mine operator so as to be a valid and enforceable regulation. The regulation, which was set forth in 20 C.F.R. § 725.302,[3] was interpreted by the court in *Brennan* to provide "that all coal mine construction companies, whether or not they engage in the extraction of coal, are operators within the meaning of the Act . . . ." *Brennan*, 372 F.Supp. at 25. With this regulation before them, the three judges in *Brennan* first attempted to determine what the statute required as prerequisites to a company's being considered a coal mine operator. The *Brennan* court succinctly stated that "[i]n order for a company to be a coal mine operator within the meaning of the Act, it must be engaged in the mining, processing or extracting of coal." *Id.* at 23. Given this statutory definition of coal mine operators, the regulation at issue in *Brennan* was clearly invalid unless coal mine construction, by its nature, involves the mining, processing or extracting of coal. After addressing the factual issue, the court made two findings which were crucial to its decision. First, the court found that

> [c]oal mine construction as such does not involve the mining, processing or extracting of coal, and there is no showing that the plaintiff-contractors engage in the mining, processing or extracting of coal. *Id.*

The court went on to find, under the evidence before it, that workers for coal mine

---

which refused to apply the Black Lung Benefits Reform Act of 1977 retroactively. *U. S. Steel v. Gray*, 588 F.2d 1022 (5th Cir. 1979); *Yakim v. Califano*, 587 F.2d 149 (3d Cir. 1978); *Treadway v. Califano*, 584 F.2d 48 (4th Cir. 1978).

**3.** 20 C.F.R. § 725.302 (1975) provided in pertinent part that:

. . . general and independent contractors, whose employees may be considered miners as defined in § 402(d) of Title IV of the Act by virtue of the fact that such employees are employed in coal mines as defined in § 3(h) of the Act, may be considered operators for purposes of §§ 415, 422, and 423 of Title IV of the Act with respect to such employees.

construction companies are not exposed to the same hazards as are those workers engaged in mining and processing coal. *Id.* In this factual and legal context, the court in *Brennan* held as follows:

> The determination by the Secretary, set forth as 20 C.F.R. § 725.302, that all coal mine construction companies, whether or not they engage in the extraction of coal, are operators within the meaning of the Act, exceeds and is inconsistent with the definition of operator as stated in Section 3(d) of the Act. *Id.* at 25.

By the express terms of the *Brennan* opinion, it is clear that it cannot serve to collaterally estop the Department of Labor from asserting that a particular coal mine construction company, under a particular set of facts, is a coal mine operator. The issue addressed and decided in *Brennan*, and the one which the Department of Labor is estopped from relitigating, is whether all coal mine construction companies are coal mine operators as defined by the statutes prior to the 1977 amendments.[4] The De-

partment of Labor has not attempted to relitigate that issue in the case now before us. Instead, the issue now before us is whether, under the facts of this case, Heyl & Patterson, Inc. is a coal mine operator within the meaning of the statute. It is this issue which was litigated before the Board below, and it is this issue which we must now address.

■ In order for Heyl & Patterson, Inc. to be a coal mine operator within the meaning of § 3(d) of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C.A. § 802(d) (1970), "... it must be engaged in the mining, processing or extracting of coal." *Brennan*, 372 F.Supp. at 23; *Bituminous Coal Operators' Association, Inc. v. Secretary of Interior*, 547 F.2d at 246.[5] In light of the factual findings below, which are supported by substantial evidence, this court is convinced that Heyl & Patterson, Inc. was engaged in the mining or processing of coal. Of particular importance are the findings that Heyl & Patterson, Inc. controlled the operation of the coal preparation plant during the two-to-six-month

---

4. This strict reading of the issue decided by *Brennan* is supported by and is the same interpretation given *Brennan* in our earlier decision of *Bituminous Coal Operators' Association, Inc. v. Secretary of Interior*, 547 F.2d 240, 245 (4th Cir. 1977).

5. A strong argument can and has been made that the 1977 amendment to the applicable statutory definition of an operator shows that prior to the amendment a coal mine construction company could never be an operator within the statute. As discussed earlier in this opinion, this amendment changed the definition of operator to expressly include coal mine construction companies by adding the language "or any independent contractor performing services or construction at such mine" to the earlier definition. Citing the legislative history of this amendment as found in Senate Report No. 95–181, as reported in [1977] U.S.Code Cong. & Ad.News 3401, 3414, Heyl & Patterson, Inc. asserts that Congress clearly felt it was expanding the definition of a mine operator by expressly including mine construction companies. Following this analysis, Heyl & Patterson, Inc. urges us to conclude that since this new definition was clearly an expansion, it establishes that prior to the change, Congress did not intend mine construction companies to be considered mine operators.

Even though the logic of this argument is attractive, this court must refuse to follow it.

First, the conclusion sought by Heyl & Patterson, Inc. places far too much emphasis on the term "expanded" as used in the legislative history. Certainly this redefinition of operator expanded the definition because all mine construction companies now fall within that definition. The fact that the definition was expanded so that all such construction companies are now operators does not lead this court to conclude that none of them was included before. Secondly, the citation, with approval, of the case of *Bituminous Coal Operators' Association v. Secretary of Interior*, convinces this court that Congress considered mine construction companies engaged in mining, processing or extracting coal to be covered as operators all along. Indeed, if the argument put forth by Heyl & Patterson, Inc. is correct, our earlier decision in *Bituminous Coal Operators' Association v. Secretary of Interior* would seem to be incorrect, because we chose therein to include mine construction companies within the old definition of operators because of the particular facts of that case. The approval of that case in the legislative history convinces us that the inquiry we made therein was correct, and that we must now determine whether Heyl & Patterson, Inc. was engaged in mining, processing or extracting coal in order to decide whether it is a coal mine operator.

start-up phase. While it is clear that Heyl & Patterson, Inc. is not the owner or lessee of a mine, it does fall within the statutory language as a "person who . . . controls or supervises a coal mine." 30 U.S.C.A. § 802(d) (1970). This control or supervision of the mining or processing of coal brings Heyl & Patterson, Inc. within the statutory definition of a coal mine operator. *Bituminous Coal Operators' Association, Inc. v. Secretary of Interior*, 547 F.2d at 246. Furthermore, the facts concerning the coal dust exposure of the employees of Heyl & Patterson, Inc. and the resulting exposure to the disease of pneumoconiosis show that this result is consistent with the purpose of the black lung benefits, in that, these workers are exposed to the health hazards caused by coal dust exposure which were being addressed by Congress. Federal Coal Mine Health and Safety Act of 1969, § 401, 30 U.S.C.A. § 901 (1970), as amended by the Black Lung Benefits Act of 1972, P.L. No. 92–303, §§ 3(a), 4(b)(2), 86 Stat. 153, 154 (1972) (current version at 30 U.S.C.A. § 901 (Supp.1980)).

ACCORDINGLY, we conclude that, under the facts of this case, Heyl & Patterson, Inc. is a coal mine operator as defined and governed by the applicable statutes, and the decision of the Benefits Review Board is hereby AFFIRMED.