**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-7691

THOMAS SHANE MATHERLY,

                    Petitioner - Appellant,

          v.

JUSTIN ANDREWS,

                    Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, Chief District Judge. (5:13-hc-02077-D)

Argued: January 28, 2016                    Decided: March 16, 2016

Before TRAXLER, Chief Judge, and AGEE and WYNN, Circuit Judges.

Affirmed in part; reversed and remanded in part by published opinion. Chief Judge Traxler wrote the opinion, in which Judge Agee and Judge Wynn joined.

**ARGUED:** Joshua Robbins, Brian Remondino, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Michael Lockridge, BUREAU OF PRISONS, Butner, North Carolina, for Appellee. **ON BRIEF:** Stephen L. Braga, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Thomas G. Walker, United States Attorney, R.A. Renfer, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

TRAXLER, Chief Judge:

Thomas Shane Matherly appeals from the district court's order granting summary judgment to the respondent (the "government") on his petition for a writ of habeas corpus, filed under 28 U.S.C. § 2241. In the petition, Matherly challenges his prior civil commitment as a "sexually dangerous person" under 18 U.S.C. § 4248 of the Adam Walsh Child Protection and Safety Act of 2006 (the "Act"). See United States v. Matherly, 514 Fed. App'x. 287 (4th Cir. 2013) (per curiam). For the following reasons, we affirm the district court's decision in part, and reverse and remand in part.

I.

A.

The Adam Walsh Act authorizes the civil commitment of, inter alia, "sexually dangerous person[s]" who are "in the custody of the Bureau of Prisons." 18 U.S.C. § 4248(a). The civil commitment process is initiated when the Attorney General, his designee, or the Director of the Bureau of Prisons ("BOP"), certifies to the district court where the individual is confined that the individual "is a sexually dangerous person." Id. The certification automatically stays the inmate's release pending a hearing. See id.

A "sexually dangerous person" is defined as "a person who has engaged or attempted to engage in sexually violent conduct

2

or child molestation and who is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). A person is "sexually dangerous to others" if "the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). This "serious difficulty" prong "refers to the degree of the person's 'volitional impairment,' which impacts the person's ability to refrain from acting upon his deviant sexual desires." United States v. Hall, 664 F.3d 456, 463 (4th Cir. 2012) (quoting Kansas v. Hendricks, 521 U.S. 346, 358 (1997)).

"If, after [a] hearing, the [district] court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General," either for release to a state civil commitment system or to a federal facility until it is determined that the person "is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4248(d); see also United States v. Timms, 664 F.3d 436, 439 (4th Cir. 2012).

B.

In October 2003, Matherly pled guilty to one count of possession of child pornography and was sentenced to 41 months

3

imprisonment, followed by a 3-year term of supervised release. See 18 U.S.C. § 2252A(a)(5)(B). Shortly thereafter, the district court also revoked Matherly's supervised release from an earlier conviction for interstate travel to engage in a sexual act with a minor, see 18 U.S.C. § 2423, and sentenced him to a consecutive 6-month term of imprisonment. Matherly was committed to the custody of the BOP to serve his aggregate 47-month prison term. See 18 U.S.C. § 3621(a).

From October 31, 2003, to November 22, 2006, Matherly was serving his term of imprisonment in a BOP facility. With prior time served, and assuming that he earned the "good time" credit available under 18 U.S.C. § 3624(b), Matherly was eligible to be released to supervision on November 23, 2006. See J.A. 33; see also United States v. Comstock, 627 F.3d 513, 517 (4th Cir. 2010) (noting that Matherly's projected release date was November 23, 2006).[1] However, it now appears that because November 23, 2006, was Thanksgiving Day, the BOP originally

---

[1] By statute, "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence." 18 U.S.C. § 3624(a). The BOP may grant "good-time credit" of up to 54 days per year, see 18 U.S.C. § 3624(b)(1), and such "credit awarded . . . shall vest on the date the prisoner is released from custody," 18 U.S.C. § 3624(b)(2). However, "[n]othing in [subsection 3624] shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). Without application of any good-time credit, Matherly's sentence would have expired on May 26, 2007.

4

intended to exercise its discretion to release Matherly from his criminal confinement and to supervised release one day early – on November 22, 2006. See J.A. 31 (noting that Matherly "was scheduled for release" on November 22, 2006); see also 18 U.S.C. § 3624(a) ("If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday."). On that same day, however, the government certified Matherly as a "sexually dangerous person" under 18 U.S.C. § 4248, automatically staying his release from the custody of the BOP.

During the ensuing civil commitment proceedings, Matherly "conce[ded] that he previously engaged in child molestation and suffers from a serious mental disorder," leaving the government with the task of "prov[ing] by clear and convincing evidence only that Matherly 'would have serious difficulty in refraining from sexually violent conduct or child molestation if released.'" Matherly, 514 Fed. App'x. at 288 (quoting 18 U.S.C. § 4247(a)(6)). On May 3, 2012, following an evidentiary hearing, the district court found that Matherly was a "sexually dangerous person" under the Act and ordered that he be committed

to the custody of the Attorney General.  We affirmed.  See id. at 289.[2]

On April 1, 2013, Matherly filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging, among other things, that the Adam Walsh Act had been impermissibly applied retroactively to him and that, in any event, he was not "in the custody of the Bureau of Prisons" within the meaning of § 4248(a) when the government filed the § 4248 certificate.  The government moved to dismiss the petition or, in the alternative, for summary judgment, which the district court granted.  On appeal, we appointed counsel for Matherly.

## II.

We begin with Matherly's claim that the Adam Walsh Act was impermissibly applied to him because the Act became effective after he was convicted of his criminal offenses and committed to the custody of the BOP.

The commitment proceedings authorized under § 4248 are "civil - not criminal" in nature.  See Timms, 664 F.3d at 456. They are not intended to and do not punish an inmate for prior

---

[2] The delay between the filing of Matherly's certificate and the order of civil commitment was the product of extended litigation by Matherly and others regarding the constitutionality of the Adam Walsh Act.  See United States v. Comstock, 627 F.3d 513 (4th Cir. 2010); United States v. Comstock, 551 F.3d 274 (4th Cir. 2009), rev'd in part, 560 U.S. 126 (2010).

criminal offenses. See id. Accordingly, the Double Jeopardy and Ex Post Facto Clauses do not provide an avenue for release. See id. at 455-56; see also Hendricks, 521 U.S. at 370-71. Matherly does not contend otherwise. Rather, he claims that application of the Act to him violated the general presumption against the retroactive application of newly enacted statutes to prior conduct. See Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994). We disagree.

"[T]he permissibility of applying a statute retroactively is a 'pure question of law," Jaghoori v. Holder, 772 F.3d 764, 769 (4th Cir. 2014), and "is, at bottom, a question of congressional intent," id. at 770. When determining whether a statute has been impermissibly applied retrospectively, we engage in a three-step inquiry and apply "'a commonsense, functional judgment.'" Jaghoori, 772 F.3d at 771 (quoting INS v. St. Cyr, 533 U.S. 289, 321 (2001)). First, we "must determine 'whether Congress has expressly prescribed the statute's proper reach.'" Cruz v. Maypa, 773 F.3d 138, 144 (4th Cir. 2014) (quoting Landgraf, 511 U.S. at 280). "If so, the inquiry ends there." Id. If we determine that Congress has not spoken with the requisite clarity, we "must decide whether the statute would operate retroactively, 'i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with

7

respect to transactions already completed.'" Id. (emphasis added) (quoting Landgraf, 511 U.S. at 280). However, "[a] statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based on prior law." Landgraf, 511 U.S. at 269 (citation and internal quotation marks omitted). Finally, if we determine that "the statute does have a retroactive effect," we will not apply it "'absent clear congressional intent favoring such a result.'" Id. (quoting Landgraf, 511 U.S. at 280).

We think Congress sufficiently expressed its intent that the Adam Walsh Act apply to all persons in the BOP's custody who would pose a current threat to the public if released. See 18 U.S.C. § 4247(a)(5), (6) (defining a "sexually dangerous person" in part as one "who is sexually dangerous to others," because "the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released"). There is "[n]othing on the face of the statute [that] suggests that [Congress] sought to create anything other than a civil commitment scheme designed to protect the public from [a present threat of] harm." Hendricks, 521 U.S. at 361. There is likewise nothing that suggests that Congress intended to protect the public from a "sexually

8

dangerous" person who might be committed to the custody of the BOP in the future, but <u>not</u> from a "sexually dangerous" person who is already in its custody and nearer to release.

But even if we were to hold that Congress did not speak with the requisite clarity regarding the statute's proper scope, Matherly's challenge fails because the Act does not operate retroactively. In <u>Hendricks</u>, the United States Supreme Court rejected a challenge to a state statute that also permitted the civil commitment of "sexually violent predator[s]" who were presently confined by the state but scheduled for release. <u>Id.</u> at 352 (internal quotation marks omitted). A "sexually violent predator" was defined as "any person who <u>has been</u> convicted of or charged with a sexually violent offense and who <u>suffers</u> from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence." <u>Id.</u> (internal quotation marks omitted). As with § 4248 of the Adam Walsh Act, the civil commitment "inquiry [was] thus two-fold, requiring . . . both retrospective and prospective findings." <u>Timms</u>, 664 F.3d at 439. Nevertheless, the Court held that the statute "clearly [did] not have retroactive effect." <u>Hendricks</u>, 521 U.S. at 371.

> [T]he Act does not impose punishment; thus, its application does not raise <u>ex</u> <u>post</u> <u>facto</u> concerns. Moreover, the Act clearly does not have retroactive effect. Rather, the Act permits involuntary confinement based upon a determination that the person

9

> currently both suffers from a 'mental abnormality' or 'personality disorder' and is likely to pose a future danger to the public.    To the extent that past behavior is taken into account, it is used . . . solely for evidentiary purposes.

Id. at 370-71 (third emphasis added); see Landgraf, 511 U.S. at 266 (noting that "the antiretroactivity principle finds expression in several provisions of our Constitution," including "[t]he Ex Post Facto Clause"); Cruz, 773 F.3d at 145 (noting that "Landgraf and the Ex Post Facto Clause are informed by the same retroactivity concerns").

Like the statute at issue in Hendricks, the Adam Walsh Act "does not seek to 'affix culpability for prior' acts.    Instead it simply 'uses' prior acts 'solely for evidentiary purposes' to support a finding of a person's mental abnormality or future dangerousness or both."    Comstock, 627 F.3d at 523 (quoting Hendricks, 521 U.S. at 362).    The Act "do[es] not operate retroactively," but rather "address[es] dangers that arise postenactment."    Vartelas v. Holder, 132 S. Ct. 1479, 1489 n.7 (2012); see id. (noting that "laws prohibiting persons convicted of a sex crime against a victim under 16 years of age from working in jobs involving frequent contact with minors, and laws prohibiting a person who has been adjudicated as a mental defective or who has been committed to a mental institution from possessing guns . . . do not operate retroactively.    Rather, they address dangers that arise postenactment:    sex offenders

10

with a history of child molestation working in close proximity to children, and mentally unstable persons purchasing guns") (internal quotation marks omitted); see also Reynolds v. Johnson, No. 12-55675, 2015 WL 9584386 (9th Cir. Dec. 31, 2015) (holding that the Adam Walsh Act "'addresses dangers that arise postenactment' and therefore 'does not operate retroactively'") (alterations omitted) (quoting Vartelas, 132 S. Ct. at 1489 n.7); United States v. Wetmore, 766 F. Supp. 2d 319, 337 (D. Mass. 2011) (rejecting retroactivity challenge to Adam Walsh Act because "Supreme Court precedent is clear that statutes permitting the civil commitment of sexually dangerous persons are not impermissibly retroactive and do not violate the Ex Post Facto Clause"); cf. Matter of Jackson, 26 I. & N. Dec. 314, 318 (BIA May 20, 2014) ("Because the Adam Walsh Act addresses the potential for future harm posed by . . . sexual predators to the beneficiaries of family-based visa petitions, . . . the application of its provisions to convictions that occurred before its enactment does not have an impermissible retroactive effect.").

Accordingly, we affirm the district court's grant of summary judgment to the government on Matherly's retroactivity claim.

III.

Matherly also contends that his civil commitment was improper because the BOP had already released him from its legal custody when the government filed the § 4248 certification. See 18 U.S.C. § 4248(a); United States v. Joshua, 607 F.3d 379, 388 (4th Cir. 2010) (holding that the term "custody" in § 4248(a) means not simply physical custody, but rather "legal custody" and, therefore, that "[t]he statutory language 'in the custody of the Bureau of Prisons' . . . requires the BOP to have ultimate legal authority over the person's detention").

The government asserted that the certification was timely under the Act because Matherly "was in BOP custody serving the last day of his criminal sentence" when it was filed. J.A. 27. In support, the government submitted a Declaration of the Custodian of Records for the BOP, referencing and attaching records from the BOP "SENTRY" database, which "tracks the status and activities of persons in BOP custody and provides . . . sentence information, locations of confinement, and release dates." J.A. 25. According to these records, Matherly's projected statutory release date, after application of time served and good time credits, was November 23, 2006. However, due to the Thanksgiving holiday, Matherly's scheduled release date was November 22, 2006 – the same day that the government filed the § 4248 certificate.

12

In his pro se response to the government's motion, however, Matherly submitted a number of additional documents that he also represents to be BOP records. Matherly claimed that "the certificate was filed after the expiration of his sentence because according to a BOP Memo," dated October 24, 2006, he was scheduled "to depart at 8:00 [a.m. on] November 22, 2006," and "[t]he certificate was filed two hours . . . after the departure time," at 10:08 a.m. J.A. 35 (emphasis added); see also J.A. 46. Based upon Matherly's interpretation of these documents, the BOP no longer had legal custody - or ultimate legal authority - over him when the certificate was filed because "the date of release arrived prior to the filing of the certification," and the BOP had already "processed [his] paperwork for release." J.A. 38.

On November 7, 2014, the district court granted summary judgment to the government without holding a hearing. In its order, the district court stated as follows:

> On November 22, 2006, at 9:20 a.m., the BOP released Matherly from custody. Forty-eight minutes later, at 10:08 a.m., an Assistant United States Attorney for the Eastern District of North Carolina commenced civil commitment proceedings against Matherly by filing a Certification of a Sexually Dangerous Person pursuant to 18 U.S.C. § 4248(a).

J.A. 64 (citations omitted). However, the district court went on to "reject[] Matherly's claim that the government lacked jurisdiction to file a certificate seeking his commitment on the

13

final day of his criminal sentence." J.A. 66. In support of its conclusion, the district court cited United States v. Wetmore, 700 F.3d 570, 575 (1st Cir. 2012) and Hubbart v. Knapp, 379 F.3d 773, 779-81 (9th Cir. 2004).

In Wetmore, the First Circuit Court of Appeals considered inmate Wetmore's similar challenge to the timing of the government's filing of a § 4248 certificate. Although the certificate had been filed the day before Wetmore's projected release date of November 18, 2006, Wetmore argued that it was untimely because his release date had been improperly calculated and should have been set a day earlier. The court rejected the challenge, as follows:

> [E]ven accepting Wetmore's premise that he was due for release on November 17, 2006, the last day of a sentence is part of that sentence, 18 U.S.C. § 3624(a); Wetmore was still serving his sentence in BOP custody on November 17 when the government filed its request; and so the request was timely on its face. . . . If it was unlawful for BOP to detain Wetmore until 11:59 p.m. on November 17, Wetmore has yet to explain why.

Wetmore, 700 F.3d at 575 (emphasis added); see also Hubbart, 379 F.3d at 780-81 (denying federal habeas relief to a petitioner who had been civilly committed under California's Sexually Violent Predator Act where the state court determined that the predator's custody at the time the commitment proceedings were initiated, while perhaps unlawful, "was the result of a good faith error" and the Sexually Violent Predator Act had provided

14

the petitioner "with numerous procedural safeguards") (internal quotation marks omitted).

We have held that the word "custody" in § 4248 "refers not to physical custody or some qualified derivative but rather to legal custody" and, therefore, that "[t]he statutory language 'in the custody of the Bureau of Prisons' . . . requires the BOP to have <u>ultimate legal authority</u> over the person's detention." <u>Joshua</u>, 607 F.3d at 388 (emphasis added). In <u>Joshua</u>, however, the inmate had been confined pursuant to a United States Army court-martial and was merely being housed within a BOP-operated facility. <u>See</u> <u>id.</u> at 381; <u>see</u> <u>also</u> <u>United States v. Hernandez-Arenado</u>, 571 F.3d 662, 667 (7th Cir. 2009) (rejecting "an interpretation that would allow physical custody alone to suffice" and instead "read[ing] custody more narrowly as including all federal offenders, but not those housed in the BOP as a service to another entity which is responsible for that individual's incarceration"). Here, in contrast, there is no question that Matherly was remanded to the legal custody of the BOP pursuant to a federal conviction and, therefore, that the BOP "ha[d] ultimate legal authority over [Matherly's] detention" while he was being physically confined in its facilities. <u>Joshua</u>, 607 F.3d at 388; <u>id.</u> at 386 (noting that the individuals referenced in § 4248(a) includes "those remanded to the custody

15

of the BOP after a federal conviction"); see also 18 U.S.C. § 2621.

Thus, the question presented by Matherly is more aptly described as whether the BOP relinquished its undisputed legal authority over Matherly – prior to the expiration of Matherly's sentence and the government's filing of the § 4248 certification. And, contrary to Matherly's claim, we have never held that physical custody is irrelevant to the question of whether the BOP relinquished its otherwise legal authority over an inmate. Cf. United States v. Savage, 737 F.3d 304, 308 (4th Cir. 2013) (noting that custody "is not limited to actual physical custody, but denotes a type of legal custody which remains in the Attorney General . . . as he discharges his responsibility to transfer a prisoner from one institution to another for the well-being of the prisoner") (internal quotation marks and alteration omitted); United States v. Earl, 729 F.3d 1064, 1068 (9th Cir. 2013) (interpreting "the term 'released' in the context of the [supervised release] statute to require not only release from imprisonment, but also release from the BOP's legal custody at the expiration of the prisoner's prescribed sentence").

Based upon the government's submission to the district court, we might well have agreed that there existed no genuine issue of fact as to whether Matherly remained in both the

16

physical and legal custody of the BOP when the § 4248 certificate was filed. Matherly does not seem to dispute that the BOP had the authority to maintain both legal and physical custody of him pursuant to his criminal sentence until, at a minimum, the end of the day on November 22, 2006. See 18 U.S.C. §§ 3621(b), 3624(a); Wetmore, 700 F.3d at 575. Nor does he claim that the BOP released him from its physical custody.

Nevertheless, this case is not so simple. Matherly, proceeding pro se at the time, submitted documents that he now contends are sufficient, in light of the district court's factual finding, to establish that the BOP actually released him from its legal custody at 9:20 a.m., on November 22, 2006. In particular, Matherly references a document entitled "Inmate History." J.A. 44. On its face, the document includes a list of "admit[s]" and "release[s]" from BOP facilities, including a "good conduct time release" from "BUF" to "BUT," with a "start date/time" of 9:20 a.m., on November 22, 2006, and "stop date/time" of 9:30 a.m., on November 22, 2006. J.A. 44. But if that entry is significant, its significance is unexplained to us. Did the BOP voluntarily relinquish its "ultimate legal authority over [Matherly's] detention," Joshua, 607 F.3d at 388, at that date and time as Matherly contends? Or did the BOP merely apply the good time credits that Matherly had been projected to earn and release him from one facility to another

17

in anticipation of the change in his status from a criminal commitment to a civil commitment? See, e.g., 18 U.S.C. §§ 3621, 3624. We simply cannot tell.

Here, the BOP records submitted by Matherly, even if they had been authenticated, are insufficient to demonstrate that the BOP relinquished its legal authority over Matherly prior to the government's filing of the § 4248 certificate on November 22, 2006, as Matherly contends. But they are also largely unexplained. And, standing alone, they are insufficient to eliminate the possibility that genuine issues of material fact exist regarding the BOP's relinquishment of its legal custody over Matherly. All in all, we believe the better course is to allow the parties an opportunity to better develop the record, and the district court an opportunity to make additional findings and conclusions in light of such developments. We express no opinion as to whether summary judgment on Matherly's custody claim would be appropriate based upon a more developed record. Nor do we express any opinion as to the government's argument that, even if untimely, the filing of the certificate could be excused as de minimis under the circumstances.

IV.

For the foregoing reasons, we affirm the district court's determination that the Adam Walsh Act was not impermissibly applied retroactively to Matherly. However, we reverse the

18

district court's grant of summary judgment to the government on Matherly's claim that he was not "in the custody" of the BOP when the § 4248 proceedings were initiated, and remand for further proceedings on this issue.

<u>AFFIRMED IN PART;</u>
<u>REVERSED AND REMANDED IN PART</u>