**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1849**

FRONTIER-KEMPER CONSTRUCTORS, INCORPORATED,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; GRAT M. SMITH,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.  (14-0435-BLA)

Argued:  September 12, 2017                    Decided:  November 30, 2017

Amended: December 12, 2017

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

**ARGUED:** Mary Lou Smith, HOWE, ANDERSON & SMITH, P.C., Washington, D.C., for Petitioner.  Sarah Marie Hurley, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.; Joseph E. Wolfe, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for Respondents.  **ON BRIEF:** M. Patricia Smith, Solicitor of Labor, Maia S. Fisher, Acting Associate Solicitor, Gary K. Stearman, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs. Victoria S.

Herman, WOLFE WILLIAMS & REYNOLDS, Mt. Hope, West Virginia, for Respondent Grat M. Smith.

———————————

DIAZ, Circuit Judge:

Frontier-Kemper Constructors, Inc. ("Frontier-Kemper") appeals the Decision and Order of the U.S. Department of Labor Benefits Review Board holding Frontier-Kemper responsible for the payment of benefits to a coal miner, Grat M. Smith, under the Black Lung Benefits Act (the "BLBA"), 30 U.S.C. § 901 *et seq.* Frontier-Kemper does not contest Smith's eligibility for benefits, but instead disputes its liability for the claim. We find that Frontier-Kemper is liable and therefore affirm.

## I.

## A.

Before discussing the details of Frontier-Kemper's challenge, we provide a brief overview of the statutory and regulatory framework through which the BLBA imposes liability on employers for the payment of miners' claims.

The BLBA provides benefits to miners who are disabled by pneumoconiosis.[1] 30 U.S.C. §§ 901(a), 922(a), 932(c). The disabled miner's most recent employer is generally liable for payment of those benefits, but if no employer is found liable (or the employer is no longer in business), the Black Lung Disability Trust Fund pays the benefits. 26 U.S.C. § 9501(d)(1).

---

[1] "Pneumoconiosis" is a chronic dust disease of the lung and its aftereffects, including respiratory and pulmonary impairments, arising out of coal mine employment. 20 C.F.R. § 718.201.

Only "operators," as defined by the Federal Mine Safety and Health Act (the "FMSHA"), can be liable for black lung benefits claims. Prior to 1977, the FMSHA defined "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal mine." 30 U.S.C. § 802(d) (1976). In 1977, Congress amended this definition to include "any independent contractor performing services or construction at such mine." 30 U.S.C. § 802(d).

When an operator is acquired or reorganizes, liability for benefits claims transfers to the "successor operator." *See* 30 U.S.C § 932(i). Successor operators are liable to pay such benefits for "miners previously employed by [a] prior operator as if the acquisition had not occurred and the prior operator had continued to be an operator." 30 U.S.C § 932(i)(1) To that end, the BLBA regulations provide that "any employment with a prior operator shall also be deemed to be employment with the successor operator." 20 C.F.R. § 725.493(b)(1).

Often, a miner claiming benefits has worked for multiple employers over the course of his or her career. In that case, the "responsible operator" is the most recent employer, so long as that employer qualifies as a "potentially liable operator." 20 C.F.R. § 725.495(a)(1). For an operator to be potentially liable, an operator or its successor must have employed the miner for a cumulative period of at least one year. 20 C.F.R. § 725.494(c).

After determining a miner's eligibility for benefits and identifying potentially liable operators, the Department of Labor awards benefits and assigns liability. The operator liable for benefits may then request a de novo hearing before an Administrative Law Judge

4

("ALJ"), and if dissatisfied with the result, appeal to the Board. *See* 20 C.F.R. § 725.450, 725.481.

B.

During the 1970s, Frontier Constructors and Kemper Construction formed a partnership (the "Partnership") that worked on heavy construction projects in the mining industry. Smith, who worked for a variety of coal mine construction companies throughout his career, was employed by the Partnership from December 1973 through August 1974.

In 1982, the Partnership reorganized into a newly-formed corporation, Frontier-Kemper. Many years later, Frontier-Kemper hired Smith to work on two mine repair projects, from August through November 2005. After x-rays revealed opacities in Smith's lungs, he filed a claim under the BLBA. The Department of Labor determined that Frontier-Kemper was a successor operator to the Partnership. Thus, Smith's employment with the Partnership was deemed to be employment with Frontier-Kemper.

The Department then considered whether Smith's combined employment with the two companies totaled at least one year. Based on Smith's Social Security Administration wage records and additional discussions with Smith during 2010, the Department determined that Smith had worked at the Partnership from December 10, 1973 through August 31, 1974, and at Frontier-Kemper from August 2005 to November 2005—a cumulative period of just over one year. Accordingly, the Department issued a proposed order awarding benefits and designating Frontier-Kemper as the operator responsible for Smith's benefits.

5

Frontier-Kemper objected and requested a hearing before an ALJ, who awarded Smith benefits. At the hearing, Smith testified that although he could not recall exactly when he began working for the Partnership, it was probably in early December 1973. Smith noted that he had been working for at least a week when his wife's uncle died in a mining accident on December 17, 1973. The ALJ also considered Smith's deposition testimony, his answers to interrogatories and questions from the Department, pay stubs, W-2s, employment records, and wage records.

Like the Department, the ALJ determined that Frontier-Kemper was a successor operator to the Partnership based on the 1982 reorganization. He also found that Smith's cumulative employment with the Partnership and Frontier-Kemper exceeded a year. On that issue, the ALJ credited Smith's testimony, his previous statements to the Department, and his wage records to find that Smith worked for the Partnership for the last three weeks of December 1973 and for the first eight months of 1974. And based on Frontier-Kemper's employment records, the ALJ found that Smith worked for the company for three months and two weeks in 2005.

Frontier-Kemper appealed the ALJ's decision to the Benefits Review Board. The company argued that the Partnership was not a coal mine operator during Smith's employment because it did not meet the definition of "operator" under the version of the BLBA in effect in 1973–74. Frontier-Kemper asserted that applying the current definition of "operator" would be impermissibly retroactive—thus, a determination that Frontier-Kemper was a successor operator would likewise be improper.

6

The Board held that the Partnership was an operator at the time of its 1982 reorganization, and that Frontier-Kemper was therefore properly considered a successor operator. The Board explained that applying the expanded definition of "operator" to Smith's 1973–74 employment was not impermissibly retroactive because Smith's claim was filed long after the new definition took effect, giving Frontier-Kemper ample opportunity to protect its interests accordingly.

The Board also agreed with the ALJ that Smith cumulatively worked for at least one year for the companies, notwithstanding minor mistakes in the ALJ's calculation. Accordingly, the Board affirmed the ALJ's decision and order awarding benefits. Frontier-Kemper's petition to this court followed.

II.

The issues before us are whether the Partnership can properly be considered an "operator" and thus Frontier-Kemper its "successor operator," and if so, whether the ALJ correctly found that Smith's cumulative employment with the two companies totaled at least one year. We review the Board's and the ALJ's conclusions of law de novo. *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 282 (4th Cir. 2010). We will not overturn an ALJ's factual findings so long as they are supported by substantial evidence. *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015). "To determine whether this standard has been met, we consider 'whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence.'" *Id.* (quoting *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir. 2013)). We

7

defer to the ALJ to make credibility determinations and resolve inconsistencies or conflicts in the evidence. *Id.*

A.

Frontier-Kemper maintains that applying the expanded definition of "operator" adopted by Congress in 1977 to Smith's employment predating the 1977 amendments would have an impermissible retroactive effect. Frontier-Kemper says that an operator cannot be a successor operator under the BLBA unless the prior entity was itself an operator. Because the statutory definition of "operator" in 1973–74 did not include coal mine construction companies like the Partnership, Frontier-Kemper argues that it cannot be liable for Smith's benefits on a successor operator theory. Doing so, in its view, impermissibly attaches new legal consequences to events that occurred before the enactment of the 1977 amendments—namely, Smith's 1973–74 employment with the Partnership. Central to Frontier-Kemper's argument is the notion that this earlier employment, not Smith's later work for Frontier-Kemper, is what matters for assessing its liability.

The Department frames the successor operator analysis differently. It argues that because the Partnership was clearly an "operator" by the time it reorganized in 1982 (five years after the 1977 amendments to the BLBA), Frontier-Kemper is indisputably a successor operator. According to the Department, Smith's employment with the Partnership can be properly attributed to Frontier-Kemper because the events triggering Frontier-Kemper's liability—Smith's 2005 employment there—occurred long after the 1977 amendments.

8

The Board concluded that the filing date of the miner's claim controls the definition of "operator" to be applied and that applying the post-1977 BLBA definition to the Partnership in the context of a claim filed in 2008 has no impermissible retroactive effect. The Board noted that Frontier-Kemper had "ample opportunity" to protect its interests (by securing commercial insurance, qualifying as a self-insurer, or declining to hire Smith) when acquiring the Partnership and employing Smith in 2005. Accordingly, the Board held that Frontier-Kemper was a successor operator and that Smith's employment with both entities could be combined in determining Frontier-Kemper's potential liability. As we explain, we agree with the Board.

B.

When an operator is acquired by or reorganized into another operator, liability for benefits claims transfers to the "successor operator." *See* 30 U.S.C § 932(i). Therefore, "any employment with a prior operator shall also be deemed to be employment with the successor operator." 20 C.F.R. § 725.493(b)(1). As we noted above, prior to 1977, the FMSHA defined "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal mine." 30 U.S.C. § 802(d) (1976). In 1977, Congress amended this definition to include "any independent contractor performing services or construction at such mine." 30 U.S.C. § 802(d).[2]

---

[2] Frontier-Kemper asserts in its reply brief that the evidence does not conclusively establish that the Partnership was performing coal mine construction work at the time of the 1982 reorganization. Although an issue first argued in a reply brief is not properly presented and therefore waived, *see Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996), we nonetheless briefly address and dispose of Frontier-Kemper's argument

As to Frontier-Kemper's claim that the Board's decision on liability was impermissibly retroactive, we begin by acknowledging that "a court is to apply the law in effect at the time it renders its decision." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994) (internal quotation marks omitted). We also accept the canon that "[r]etroactivity is not favored in the law" as well as the Supreme Court's clarification that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.*

But while this presumption against retroactivity is "deeply rooted in our jurisprudence," a statute "does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Cruz v. Maypa*, 773 F.3d 138, 144 (4th Cir. 2014) (quoting *Landgraf*, 511 U.S. at 265, 269). Instead, we must examine "whether the new provision attaches new legal consequences to events completed before its enactment" in a way that offends "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf*, 511 U.S. at 270.

We engage in a three-part inquiry and apply a "commonsense, functional judgment" to determine whether a statute's application is impermissibly retroactive. *Matherly v.*

---

here. The record shows that Frontier-Kemper traces its history to the formation of the Partnership in 1971 and notes that "[s]ince its inception, Frontier-Kemper has completed over 240 construction contracts involving nearly 185 miles of tunnels and slopes, and over 33 miles of vertical shafts." J.A. 268. The Partnership remained a member of the Association of Bituminous Contractors from 1973 onwards and Frontier-Kemper's counsel acknowledged early in these proceedings that the Partnership "continued to engage in heavy construction projects [after 1973], both in mining and non-mining settings." J.A. 322. Thus, we are satisfied that the Partnership was an operator in 1982.

*Andrews*, 817 F.3d 115, 119 (4th Cir. 2016) (internal quotation marks omitted). First, we consider "whether Congress has expressly prescribed the statute's proper reach." *Id.* If it has, we follow those express instructions. *Id.* Second, if Congress has not spoken clearly, we look to see whether the statute operates retroactively by "impair[ing] rights a party possessed when he acted, increas[ing] a party's liability for past conduct, or impos[ing] new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. Third, if the statute does operate retroactively, it should not apply "absent clear congressional intent favoring such a result." *Id.*

Congress has not expressly prescribed the temporal reach of the definition of "operator" adopted in 1977 and reflected in the Department's regulations. Accordingly, we consider whether applying the expanded definition in this case retroactively "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.

We think not. Specifically, affirming Frontier-Kemper's liability does not "attach[] new legal consequences to events completed before [the statute's] enactment" in a way that offends "familiar considerations of fair notice, reasonable reliance, and settled expectations" because the conduct giving rise to Frontier-Kemper's liability occurred when it employed Smith in 2005. *Id.* at 270. When, as in this case, past facts antedating a statutory change are relevant, but not determinative, to establish liability in a case filed long after the statutory change has taken effect, the law does not operate retroactively. *See Landgraf*, 511 U.S. at 269; *see also McAndrews v. Fleet Bank of Massachusetts, N.A.*, 989

11

F.2d 13, 16 (1st Cir. 1993) ("Even when the later-occurring circumstance depends upon the existence of a prior fact, that interdependence, without more, will not transform an otherwise prospective application into a retroactive one.").

Moreover, a statute has no retroactive effect where the conduct being regulated begins before a statutory change occurs and continues after that change has taken effect. In *Fernandez-Vargas v. Gonzales*, for example, the government applied new limitations on relief from removal for illegal reentrants to an alien who had reentered the country long before the limitations became law but remained in the country illegally after the changes took effect. 548 U.S. 30, 33–36 (2006). Because the conduct regulated continued after the new statute's passage, allowing the alien the choice to leave the country or continue his illegal conduct, the Supreme Court held that the law had no retroactive effect under the circumstances presented. *Id.* at 46–47.

Like the factual timeline in *Fernandez-Vargas*, the sequence of events affecting Frontier-Kemper's liability demonstrates that the company is not being subjected to new legal consequences for a past act that it is "helpless to undo." *Id.* at 44. Smith's 1973–74 employment alone is not enough to subject Frontier-Kemper to liability for the payment of his benefits. Rather, liability attaches only because Frontier-Kemper chose to acquire the Partnership (four years after Congress expanded the BLBA to make the Partnership liable for black lung benefits), and because it chose to hire Smith again in 2005. Frontier-Kemper thus had ample opportunity to modify its conduct in accordance with Congress's expansion of liability to coal mine construction companies, by evaluating and insuring its exposure to

12

black lung benefits claims before it acquired the Partnership, and well before it decided to hire Smith in 2005.

Frontier-Kemper's reliance on our decision in *Hughes v. Heyl & Patterson, Inc.*, 647 F.2d 452 (4th Cir. 1981) to urge a different result is misplaced. There, we addressed a similar question of retroactivity in the context of the expanded definition of "operator" under the 1977 BLBA amendments and held that the application of the expanded definition to a claim filed prior to the amendments' enactment would be impermissibly retroactive. *Hughes*, 647 F.2d at 454. We reasoned that because the period of employment giving rise to the claim and the filing of the claim *both* occurred before the effective date of the amendment, "the retroactive application of the expanded definition would deny [coal mining construction companies] the opportunity to obtain insurance coverage for such liability." *Id.* By contrast, the employee here filed his claim long after the expanded definition took effect, and the employment giving rise to the claim also took place after the effective date of the 1977 amendments.

Accordingly, we conclude there is no retroactive effect in applying the expanded definition of "operator" to the Partnership for the purpose of combining Smith's employment there with his later work at Frontier-Kemper.

C.

Finally, we address briefly Frontier-Kemper's claim that the ALJ erred in determining that the total period of Smith's employment with Frontier-Kemper and the Partnership was at least a year. Noting the broad discretion granted to ALJs in evaluating the credibility of evidence, the Board found (and we agree) that the ALJ permissibly

13

credited Smith's testimony and the relevant wage records in arriving at a rational conclusion regarding the length of Smith's employment. While Frontier-Kemper's brief highlights clerical mistakes by the ALJ as he made his way through the calculation, these did not affect the ALJ's ultimate (and correct) finding that Smith worked for Frontier-Kemper and the Partnership cumulatively for at least one year.

## III.

For the foregoing reasons, we affirm the decision of the Benefits Review Board.

*AFFIRMED*