**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-6181

UNITED STATES OF AMERICA,

Petitioner - Appellant,

v.

OLIVER LEE WHITE,

Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:17-hc-02162-D)

Argued:  May 8, 2019                                    Decided:  June 18, 2019

Before NIEMEYER, DIAZ, and RICHARDSON, Circuit Judges.

Reversed and remanded with instructions by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Diaz and Judge Richardson joined.

**ARGUED:**  Benjamin M. Shultz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Jaclyn Lee DiLauro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Joseph H. Hunt, Assistant Attorney General, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert J. Higdon, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

With its filing of a certificate in the district court that Oliver White is a "sexually dangerous person," the government commenced this civil proceeding under 18 U.S.C. § 4248 to commit White to the custody of the Attorney General. After ordering and receiving a mental examination of White, the district court found that White was "mentally incompetent to understand the nature and consequences of the section 4248 proceeding against him and to assist properly in his defense in the section 4248 proceeding" and therefore dismissed the proceeding. A proceeding under § 4248 would have required the government to prove that White (1) "engaged or attempted to engage in sexually violent conduct or child molestation," (2) "suffers from a serious mental illness, abnormality, or disorder," and (3) "would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *Id*. § 4247(a)(5), (6). The district court held that § 4248 "permits a court to dismiss a section 4248 proceeding against an incompetent person who contests all three elements" and alternatively that "permitting such a [§ 4248 proceeding] and ensuing commitment would violate procedural due process as applied to that person."

On appeal, the government contends that the district court erred in both rulings, and we agree. We therefore reverse the district court's judgment and remand with instructions to conduct a hearing on the § 4248 proceeding initiated against White.

# I

White, now 31, is an intellectually disabled Native American man who was born in Crow Agency, Montana. His biological mother could not care for him because she abused alcohol and drugs, and he suffered from fetal alcohol syndrome. With an IQ of 55 or 56 and elementary math and reading skills, he struggled in school and in gaining employment. As one doctor summarized, White's "thought process was clearly impoverished, his mood was confused, [and] his affect was shallow."

In 2009, when White was 21, a federal grand jury in the District of Montana indicted him for the sexual abuse of four female minors under the age of 12. The government, however, dismissed the charges as part of a deferred prosecution agreement in which White agreed to reside with his mother and have no further contact with minors.

In 2012, a federal grand jury in the District of Montana indicted White for a second time, charging him with abusive sexual assaults of female minors under the age of 12. After White was found incompetent to stand trial, the court dismissed the charges and released White to his family.

On July 22, 2016, for a third time, a federal grand jury in the District of Montana indicted White, charging him with aggravated sexual abuse of female minors under the age of 12. Again, after White was found incompetent to stand trial, the court dismissed the charges.

While White was in custody at the Federal Medical Center in Butner, North Carolina, for a mental examination in connection with the 2016 charges, the government filed a certificate in the district court under 18 U.S.C. § 4248(a), certifying that White

3

was a "sexually dangerous person" and petitioned the court to commit White to the custody of the Attorney General. In its certificate, the government pointed to the past charged conduct and to psychological assessments of White to claim that White was a "sexually dangerous person" under § 4248.

After receiving the certificate, the district court directed the Federal Public Defender to represent White and appointed a licensed psychiatrist as a mental health examiner of White. White's counsel then filed motions for the appointment of a guardian ad litem, to dismiss the § 4248 certificate filed against him, and, in the alternative, for a competency hearing, contending that White's mental incompetence would preclude subjecting him to a § 4248 hearing.

The district court granted the motion to appoint a guardian ad litem and, before conducting a § 4248 hearing, ordered a competency hearing "to determine whether White is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceeding under 18 U.S.C. § 4248 against him or to assist properly in his defense." In ordering the competency hearing, the court overruled the magistrate judge, who recommended that White's motion for a competency hearing be denied because §§ 4241 and 4248 contemplate commitment for individuals in White's "exact situation."

After conducting the competency hearing, the court determined that "White [was] currently suffering from a mental disease or defect, . . . which render[ed] White unable to understand the nature and consequences of the § 4248 proceeding against him and to assist properly in his defense in the § 4248 proceeding." Given that White contested all

4

three elements of § 4248 — (1) that he had previously "engaged or attempted to engage in sexually violent conduct or child molestation"; (2) that he "suffers from a serious mental illness, abnormality, or disorder"; and (3) that as a result, he "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(a)(5), (6) — the court expressed concern, particularly because White contested the element requiring proof of prior conduct, that "the respondent face[d] the prospect of indefinite commitment arising from a trial focused on both his past conduct and present mental condition even though he lack[ed] the capacity to understand the section 4248 trial or to participate rationally in his defense." Concluding that § 4248 allowed it to dismiss the § 4248 proceeding "against an incompetent person who contests all three elements" and alternatively that conducting a § 4248 proceeding would violate White's constitutional right to procedural due process, the court granted White's motion to dismiss the proceeding.

From the district court's judgment dated December 6, 2018, the government filed this appeal.

II

We address first whether § 4248 or any other related provision in Chapter 313 of Title 18 permits a district court to dismiss a § 4248 proceeding against a person because he is mentally incompetent.

Section 4248 was enacted in 2006 as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, to "protect children from sexual

5

exploitation and violent crime," *id*., in the context of a "growing epidemic of sexual violence against children," H.R. Rep. No. 109-218, pt. 1, at 20 (2005). The provision was included as an addition to Chapter 313 of Title 18 (18 U.S.C. §§ 4241–4248), which addresses "Offenders with Mental Disease or Defect." Section 4248 itself was included as "a modest addition to a set of federal prison-related mental-health statutes that have existed for many decades," and it "focuses directly upon persons who, due to a mental illness, are sexually dangerous." *United States v. Comstock*, 560 U.S. 126, 137, 141 (2010).

Section 4248 provides that after the government files a certificate with a district court that a person "is a sexually dangerous person," the court "shall order a hearing" to determine whether the person is indeed a sexually dangerous person. 18 U.S.C. § 4248(a). For a person to be found "sexually dangerous," the government must demonstrate that the person (1) has "engaged or attempted to engage in sexually violent conduct or child molestation"; (2) "suffers from a serious mental illness, abnormality, or disorder"; and (3) "would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(5), (6); *see also Comstock*, 560 U.S. at 129; *United States v. Antone*, 742 F.3d 151, 158 (4th Cir. 2014). If the court finds, "by clear and convincing evidence," that the person is a sexually dangerous person, then it must commit the person to the custody of the Attorney General, *id*. § 4248(d), who is charged to treat the person and release him if and when a court finds, by a preponderance of the evidence, that the person is no longer dangerous or no longer dangerous under prescribed conditions of release, *id*. § 4248(a), (d), (e).

6

Section 4248 makes no provision for the release of a person subject to a government certificate because the person is "mentally incompetent." Indeed, § 4241(d) indicates otherwise. Under that section, which addresses hearings for mental incompetency in the context of criminal proceedings, if the person is found mentally incompetent "to the extent that he is unable to understand the nature and consequences of the proceeding[s] . . . against him or to assist properly in his defense," the court must commit him to the Attorney General for hospitalization. 18 U.S.C. § 4241(d). And if hospitalization does not sufficiently alleviate the condition — *i.e.*, if the person is unlikely to regain competency — "the defendant is subject to the provisions of . . . § 4248." *Id.* And § 4248 accordingly provides for civil commitment following a hearing if the court finds that the person is sexually dangerous. *Id.* Indeed, § 4248 explicitly recognizes its role following a hearing under § 4241 for mental incompetency. *See id*. § 4248(a) (addressing persons committed to the custody of the Attorney General "pursuant to § 4241(d)"). There is little doubt that § 4248 applies to persons found mentally incompetent under § 4241.

Of course, to read into these provisions a defense that a mentally incompetent person who is sexually dangerous cannot be committed to the custody of the Attorney General under § 4248 would defeat the core purpose of the statute — to protect the public from sexually dangerous persons. Under such a reading, a mentally incompetent person, who had raped women on three separate occasions, but never stood trial for the rapes because he was mentally incompetent, could not be removed from society under § 4248, thus leaving the public with the very risk that § 4248 was designed to eliminate. *See*

7

*Comstock*, 560 U.S. at 141 (noting that § 4248 is designed to protect the public from mentally ill individuals who are sexually dangerous); *United States v. Comstock*, 627 F.3d 513, 520 n.2 (4th Cir. 2010) (recognizing that criminal defendants found mentally incompetent to stand trial are appropriately subject to § 4248 proceedings because they "may have committed the criminal offense due to their mental illness or incompetence"). Chapter 313 of Title 18 explicitly recognizes the problem of mentally incompetent persons who are dangerous to society, providing expressly for their commitment, whether they are simply dangerous persons (addressed by § 4246) or sexually dangerous persons (addressed by § 4248). In both circumstances, commitment is subject to the procedures and safeguards expressly provided in each of those sections.

In this case, the district court, after receiving the government's § 4248 certificate, determined to conduct an initial hearing to determine whether White was mentally competent. The government objected to such a hearing because the need to determine mental incompetency related legally only to criminal proceedings and a finding under § 4241 that one was mentally incompetent would not address any requirement for commitment under § 4248. The court overruled the objection and conducted a competency hearing, after which it concluded that White was indeed mentally incompetent. The court thereupon dismissed the § 4248 proceeding without a § 4248 hearing because, as it explained, White was unable to understand the nature and consequences of the proceeding and to assist properly in his defense. But in conducting a mental competency hearing and not a § 4248 hearing, the court failed to recognize that

8

Chapter 313 authorizes a § 4248 hearing for persons found mentally incompetent under § 4241.

While all hearings under Chapter 313 are governed by § 4247(d) — *see, e.g.*, 18 U.S.C. § 4241(c); § 4246(c); § 4248(c) — a hearing to determine incompetency is authorized by § 4241, which the district court did not explicitly recognize, although that was noted by the magistrate judge. And the court's conclusion that White's mental incompetence precludes his being subject to a § 4248 hearing is in tension with both § 4241(d) and § 4248(a). Section 4241(d) explicitly authorizes a § 4248 hearing for a person found mentally incompetent and whose condition has not improved with hospitalization. And § 4248(a) provides that § 4248 is applicable to persons found incompetent under § 4241(d). In short, if a person is found mentally incompetent under § 4241 and is not likely to get better, he still remains subject to confinement under § 4248 if he is found "sexually dangerous." *Id*. § 4248(a). With this interaction of § 4241 and § 4248, we cannot conclude that somehow § 4248 authorizes a court to dismiss a § 4248 proceeding because the person is mentally incompetent. There is simply nothing to suggest that a mentally incompetent person who is certified to be sexually dangerous must be released because "he is unable to understand the nature and consequences of the proceedings against [him] or assist properly in [his] defense." *Id*. § 4241(a). Indeed, to so conclude would eviscerate the core purpose of § 4248.

We therefore hold that Chapter 313 of Title 18, and § 4248 in particular, did not authorize the district court to dismiss the § 4248 proceeding against White on the ground that he was found to be mentally incompetent.

III

The district court separately worried whether the § 4248 proceeding against White would violate the Due Process Clause in that White "face[d] the prospect of indefinite commitment" based on "both his past conduct and present mental condition even though he lacks the capacity to understand the [§ 4248 proceeding] or to participate rationally in his defense." In particular, the court focused on White's ability to defend against proof *of his prior conduct* under the statute's requirement that the government show that he had "engaged or attempted to engage in sexually violent conduct or child molestation." 18 U.S.C. § 4247(a)(5). It stated:

> The central focus of the first element under the Adam Walsh Act looks back in time and requires the United States to prove by clear and convincing evidence at least one instance of actual or attempted sexually violent conduct or child molestation. In nearly every Adam Walsh Act case, the respondent does not contest the first element, and the United States simply presents a judgment of conviction from a criminal case where the respondent was convicted of actual or attempted sexually violent conduct or child molestation. In this case, however, White has never been convicted of any crime, much less actual or attempted sexually violent conduct or child molestation. Thus, . . . in this section 4248 proceeding, the United States will have to present witnesses and evidence concerning the first element. The United States also will present arguments to the court seeking to persuade the court that the United States has proven that White has engaged in at least one instance of actual or attempted sexually violent conduct or child molestation. Likewise, . . . White will have the opportunity to challenge the government's evidence and witnesses concerning the first element, present his own evidence and witnesses, and present arguments to the court seeking to persuade the court that the government has failed to prove that White has engaged in at least one instance of actual or attempted sexually violent conduct or child molestation.

(Footnote omitted). The court thus reasoned that an incompetent person contesting the prior-conduct element "effectively loses [his] statutory rights because he lacks the ability to rationally understand the proceeding against him or communicate with his counsel about the factual allegations at the heart of the first element's factual inquiry," concluding therefore that such a § 4248 proceeding "would not comport with procedural due process" and citing *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* requires the application of a test weighing (1) White's liberty interest; (2) the risk of an erroneous deprivation of that interest under current procedures; and (3) the government's interest and burden of providing any additional procedure that would be required. *See id*. at 335.

White, of course, agrees with the district court, contending that committing him as an incompetent person who contests the prior conduct element violates his right to procedural due process. Applying the *Mathews* test, he describes his liberty interest as profound. He describes the risk of erroneous deprivation as "enormous" because, "in support of a meaningful adversarial process, the statute provides that a respondent is entitled to counsel, and that he will have the 'opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.' But Mr. White cannot do any of those things." (Quoting 18 U.S.C. § 4247(d)). And addressing the government's interests, he argues that they are "not significant in this case" because the government "may not serve those interests by *assuming* that a person in Mr. White's position is sexually dangerous."

Thus, we are presented with the novel question of whether § 4248 violates the Due Process Clause insofar as it requires White, a mentally incompetent person, to defend

11

against allegations of past bad sexual acts while he does not understand the proceedings and cannot assist in his defense.

It is, of course, well established that the Constitution does not permit a mentally incompetent person to be subject to a criminal trial, *see Indiana v. Edwards*, 554 U.S. 164, 170 (2008), or a mentally incompetent person to be indefinitely civilly committed solely on account of his incompetency, *Jackson v. Indiana*, 406 U.S. 715, 720, 738 (1972). But the Constitution *does* permit the indefinite civil commitment of a mentally incompetent person who is also dangerous. *See Greenwood v. United States*, 350 U.S. 366, 373–75 (1956). Nonetheless, particular aspects of civil commitment statutes have been subject to constitutional challenges over the years.

In *Addington v. Texas*, 441 U.S. 418 (1979), the Supreme Court held that the clear-and-convincing standard of proof, rather than the preponderance-of-the-evidence standard, must be applied in a civil commitment proceeding. *Id.* at 427–33. Also, in *Comstock*, the Court held that Congress's enactment of § 4248 was authorized by the Constitution's Necessary and Proper Clause. *See* 560 U.S. 126. And on remand of *Comstock*, we held that § 4248's requirement that past bad sexual acts need only be proved by clear and convincing evidence rather than beyond a reasonable doubt, does not violate the Due Process Clause. *See Comstock*, 627 F.3d 513. But no court, as far as we are able to ascertain, has held that it is unconstitutional to subject an incompetent person to indefinite civil commitment under § 4248 when the person challenges all three elements for such commitment, especially the prior-conduct element.

12

The parties agree that the relevant analysis should be governed by *Mathews*. *See Addington*, 441 U.S. at 425 (applying the *Mathews* framework to the due process analysis of a civil commitment statute). *Mathews* holds that a due process challenge is governed by a three-factor balancing test, weighing (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation with the procedures presently used; and (3) the government's interest, including the function involved and the fiscal and administrative burdens associated with additional procedures. *Id*. at 335.

When we consider the first of *Mathews*' three factors, there is no dispute that White's liberty interest is extraordinarily weighty. A civil commitment "for any purpose constitutes a significant deprivation of liberty." *Addington*, 441 U.S. at 425. We accept that proposition as foundational.

In a similar vein, when we consider the third *Mathews* factor, we agree with the district court that the government has an "important and substantial interest in delivering mental health care to sexually dangerous persons who are in federal custody and [in] protecting the public from such individuals." *See Addington*, 441 U.S. at 426 (recognizing that the State has a *parens patriae* interest in an individual's mental health and "authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill"). Again, we accept this as a weighty factor.

But the dispute between the government and White in this case focuses on the second *Mathews* factor — whether, when a person is mentally incompetent, the process afforded in § 4248 allows too great a risk of an "erroneous deprivation of [the private] interest through the procedures used." 424 U.S. at 335.

13

To be sure, White as a mentally incompetent person, cannot be subject to *criminal* liability. But the procedures provided in this case are, we conclude, constitutionally sufficient to commit him in a *civil* proceeding. In a § 4248 proceeding, the government must, as White has repeatedly noted, prove that he previously engaged in sexually violent conduct or child molestation. And because that proof implicates historical facts, White's mental incompetency does indeed present him with a challenge in responding to the government's case because he is unable to assist in his defense. Nonetheless, we conclude that the risk of an erroneous deprivation of White's liberty interest is substantially and adequately mitigated by the broad array of procedures required for a § 4248 commitment, particularly as they apply to incompetent persons.

*First*, the statute requires that White have counsel, and in this case, he was not only appointed counsel, he was also provided a guardian ad litem to look after his interests and assist his counsel. *See* 18 U.S.C. § 4247(d).

*Second*, the court must conduct a hearing, and White's counsel must be able to subpoena witnesses, present evidence, and cross-examine the government's witnesses at that hearing. *See id*. § 4248(a), (c); *id*. § 4247(d).

*Third*, the government must prove the necessary elements, including White's prior conduct, by clear and convincing evidence, a burden of proof greater than the preponderance-of-the-evidence standard that is routine in civil proceedings. *See id*. § 4248(d).

And *fourth*, the risk that an erroneous factual finding of prior sexual violence or child molestation will result in civil commitment is substantially mitigated by the

14

personal observations and opinions of professionals that are required to prove that White is "sexually dangerous to others" in that he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released" — showings that the government is required to make. *Id*. § 4247(a)(5), (6).

In addition, any order of commitment under § 4248 is subject to correction by multiple mechanisms afforded by the statute. The government must file an annual report concerning White's mental condition with recommendations as to the need for continued commitment. *See* 18 U.S.C. § 4247(e)(1)(B). Moreover, White's counsel can seek a video recording of the interview of White upon which the annual report is based to assist in the district court's review of White's commitment following such reports. *See id*. § 4247(f). Also, White's counsel can, "at any time" after the first 180 days, file a motion to have a court determine whether he should be released. *See id*. § 4247(h). And as important, when the director of the facility to which White has been committed determines that he is no longer sexually dangerous, with conditions or not, the director *must promptly certify* that fact to the court. *See id*. § 4248(e). Finally, White retains the right to challenge the legality of his detention at any time by filing a petition for a writ of habeas corpus, which is explicitly preserved. *See id*. § 4247(g).

Under these procedures, it is difficult to conceive of circumstances where a person such as White would be wrongfully committed, although we recognize there is always some degree of risk inherent in any type of adversary proceeding, including a § 4248 proceeding. As we explained on remand in *Comstock*, the Supreme Court approved the

15

constitutionality of the commitment scheme before it in *Addington* because "layers of professional review and the concern of family and friends provided continuous opportunities for an erroneous commitment to be corrected." 627 F.3d at 521 (cleaned up). And we concluded that § 4248 "offers the same sort of professional review and opportunity for correction of an erroneous commitment" by mandating discharge "as soon as a person ceases to pose a danger to others." *Id.*

At bottom, while White's liberty interest is surely one of the most important to protect under the Constitution, the government's police power is also important when exercised to protect the public from persons found to be unable to control their sexual dangerousness. The balance struck by § 4248 in serving these interests is, we conclude, constitutionally sufficient under the Due Process Clause and *Mathews*.

Accordingly, we reverse the judgment of the district court and remand with instructions that the court promptly conduct a § 4248 hearing to determine whether White is sexually dangerous and therefore must be committed to the custody of the Attorney General.

REVERSED AND REMANDED
WITH INSTRUCTIONS